[Filed May 16, 1890.]

## RASMUS LARSEN, Respondent, *v.* THE OREGON RAILWAY & NAVIGATION COMPANY, Appellant.

Answer—Failure to Reply to New Matter.—By failing to reply to new matter in an answer, every material fact that is well pleaded therein stands admitted, but legal conclusions need not be denied.

Railroad—Right of Way Through the Public Lands of the United States—Act of March 3, 1875.—To entitle a railroad company to a right of way through the public lands of the United States as against one in possession of such lands, it must appear that such railroad company complied with the act of congress of March 3, 1875,—that is, it must have filed with the secretary of the interior a copy of its articles of incorporation and due proof of its organization under the same, and it must also have claimed the benefits of said act by filing with the register of the land-office of the proper district a profile of its road.

Homestead Settler—Public Lands of the United States.—When a homestead claimant settles upon the public lands of the United States, and in due time files upon said homestead claim as required by the act of congress granting homesteads to actual settlers upon the public lands of the United States, said homestead claim thus becomes separated from the public domain and ceases to be public lands of the United States, and thereafter a railroad company, by complying with the act of March 3, 1875, does not acquire a right of way through the homestead claim of such settler; held, further, that the act of congress of March 3, 1875, does not purport to grant a right of way through the claim of those who had prior to the time such right attached acquired possessory rights in such public lands, and that by the third section of the act such rights are only to be taken by condemnation.

Trespass—Construction of a Railroad Through One's Land Without His Consent—Measure of Damages.—When a railroad company, without the consent of the owner of land, constructs its road over and across such owner's land and runs its cars thereon and no special damages are alleged, the correct measure of dam-

ages is the difference between the annual rental value of the premises with the railroad track down and the road operated as it is, and what the rental value of the premises would have been if the road had not been there; and when it also appeared that the defendant, in effecting an entry, broke the plaintiff's close, but no special damages are alleged, the measure of damages for such breaking would be such sum as would restore the premises to such a condition of safety for use as they were in before such breaking.

INSTRUCTIONS—PROVINCE OF THE COURT AND JURY.—When an instruction otherwise proper was asked by the defendant, but said instruction in effect submitted to the jury to find from the pleadings what was and what was not specially pleaded, its refusal was not error. It is the province of the court to declare what are the issues to be tried and to construe the pleadings, and of the jury to find the facts. The instruction refused submitted matters of law to the jury the decision of which properly belonged to the court.

INSTRUCTION—REFUSED—ERROR.—When there was no allegation of special damages the refusal of the court to give this instruction was held erroneous: "The plaintiff having neither pleaded nor proved any special damages resulting from the alleged frightening of his horses, he can recover nothing from that cause."

APPEAL from Gilliam county: J. H. BIRD, judge.

This is an action for trespass alleged to have been committed by the defendant on the plaintiff's lands in Gilliam county, Oregon. The complaint alleges, in substance, that on the first day of May, 1888, the plaintiff was the owner and in the possession of certain real property mentioned in the complaint, and that while the plaintiff so owned and possessed said lands, the defendant wilfully, unlawfully, and with force and arms, broke his close and entered said premises, and that said defendant at said time broke down a fence enclosing a portion of same, and did so wrongfully, wilfully and unlawfully without plaintiff's consent and against his will, then and there construct and build a railway over, through and across said premises; that defendant has, since said March 1, 1888, and up to the date of the filing of this complaint, maintained, used, occupied and operated said road over, across and through said premises and continuously run trains upon same, whereby plaintiff was prevented from using, occupying and enjoying his said premises as fully as he might otherwise have done, and whereby plaintiff's horses were prevented from watering at their usual and customary watering-place upon said premises, all to the damage of the plaintiff in the sum of $1,000, for which sum he demands judgment, etc.

The answer denies the allegations of the complaint except it admits that it built and operated its railroad across said premises as alleged. By way of separate defense the answer alleges that on the first day of May, 1888, the tract of land described in the complaint and con- tinuously since that time was and is public land of the United States; that in pursuance of the provisions of an act of congress, entitled, ''An act granting to railroads the right of way through the public lands of the United States,'' approved March 3, 1875, the defendant duly acquired a right of way upon and over said land for, its railroad extending from Heppner in Morrow county, Oregon, to a point of junction near Willows, in Gilliam county, Oregon, with the main line of the defendant's railroad from Port- land, Oregon, to Umatilla Junction in said State; that about the month of July, 1888, the defendant lawfully entered into and took possession of a strip of land, embraced within and constituting a part of the tract in the complaint described, for said right of way for its said rail road and has been in continuous possession thereof to the present time; that during the time it has been so in pos- session, the defendant has constructed upon said right of way a railroad which forms a part of its said line from Heppner to said point of junction with said main line, and that since the first day of December, 1888, the said defend- ant has been running trains of cars upon and over its said railroad, and did so run its cars upon and over the same, and on the twenty-eighth of December, 1888, which said running of said cars is the supposed trespass mentioned in the complaint.

To this answer no reply was filed. The remaining facts appear in the opinion.

W. W. COTTON, for Appellant.

A. S. BENNETT, for Respondent.

STRAHAN, J., delivered the opinion of the court.

In disposing of this appeal it will be most convenient to first consider the new matter in the answer, and then to

refer to the exceptions taken upon the trial, for the reason that if the answer contains sufficient to give the defendant a right of way over the land in controversy, the judgment would have to be reversed as there is no reply, and whatever facts contained therein which are well pleaded, stand admitted on the record.

1.   The appellant claims that the act of congress of March 3, 1875 (18 Stats. at Large, 482), granted to it the right of way through the lands in controversy.   So much of that act as is material is as follows:   *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled:*  Section 1.  That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any State or Territory, except the District of Columbia, or by the congress of the United States, which shall have filed with the secretary of the interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take from the public lands adjacent to the line of said road, material, earth, stone and timber necessary for the construction of said railroad; also grounds adjacent to such right of way for station buildings, depots, machine-shops, side tracks, turn-outs and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of road.

Sec. 2.   That any railroad company whose right of way, or whose track or road-bed upon such right of way passes through any cañon, pass, or defile, shall not prevent any other railroad company from the use and occupancy of the said cañon, pass or defile for the purpose of its road, in common with the road first located, or the crossing of other railroads at grade.   And the location of such right of way through any cañon, pass or defile shall not cause the disuse of any wagon or other public highway now located therein, nor prevent the location through the same of any such wagon road or highway where such road or

highway may be necessary for the public accommodation; and where any change in the location of such wagon road is necessary to permit the passage of such railroad through any cañon, pass or defile, said railroad company shall, before entering upon the ground occupied by such wagon road, cause the same to be reconstructed at its own expense in the most favored location, and in as perfect a manner as the original road; *provided,* that such expense shall be equitably divided between any number of railroad companies occupying and using the same cañon, pass or defile.

Sec. 3. That the legislature of the proper State or Territory may provide for the manner in which private lands and possessory claims on the public lands of the United States may be condemned; and where such provision shall not have been made, such condemnation may be made in accordance with section 3 of the act, entitled, "An act to amend an act entitled an act to aid in the construction of a railroad and telegraph line from the Missouri river to the Pacific ocean, and to secure to the government the use of the same for postal, military and other purposes, approved July 1, 1862," approved July 2, 1864.

Sec. 4. That any railroad company desiring to secure the benefits of this act shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land-office for the district where such lands are located a profile of its road; and upon approval thereof by the secretary of the interior, the same shall be noted upon the plats in said office, and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way; *provided,* that if any section of road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road.

It is, in effect, claimed by the appellant that the grant made by the first section of the act operates in favor of all

railroads passing through any lands of the United States, notwithstanding the same may have been taken as a homestead, which shall locate its line of road across said land at any time before a patent shall be issued for the same. In other words, that a homestead continues to be "public lands of the United States" until a patent issues to the homestead claimant. It may be well doubted whether this question is presented by this record, for the reason that it does not appear that the appellant has filed with the secretary of the interior a copy of its articles of incorporation, and due proof of its organization under the same, as required by the first section of the act, nor does it appear that it ever claimed the benefits of said act as required in the fourth section, by filing with the register of the land-office of the proper district a profile of its road, or that the same was ever approved by the secretary of the interior.

These are plain requirements of the act, and without entering at large upon their discussion at this time, I think it sufficient to say that before the appellant could acquire any rights under the act as against one in possession of the land in question, it must show a compliance with its terms. But it is claimed by the appellant that the allegations in the answer, that the defendant lawfully entered into and took possession of a strip of land embraced within and constituting a part of the tract in the complaint described for said right of way for its said railroad, and that it did this in pursuance of the act of congress referred to, shows a compliance with said act; but this would be enlarging and extending the allegations of the answer far beyond their scope. Not only so, but the answer is bad in substance in failing to allege what the defendant company did by way of compliance with said act. It alleges nothing but legal conclusions. In such case, where the right claimed depends entirely on the existence of facts which are not disclosed, the simple fact that the party claimed the right is no evidence of the existence of the necessary facts to confer it. But there is

one other objection, which, owing to its importance, I think proper to notice. It appears from the bill of exceptions that the plaintiff settled on the land in controversy as a homestead in the month of December, 1886, or January, 1887, and that in the month of February, 1887, made the necessary filing in the proper land-office of his said settlement and claim.

Inasmuch as no patent had been issued for said land and the plaintiff's right thereto was still possessory, the five years not having expired from the date of the commencement of his residence, the appellant claims that at the time of its entry thereon the same was public land and within the power of congress to dispose of as it might think fit, and that the grant made by said act of March 3, 1875, is such disposition, and counsel cites the Yosemite Valley case, 15 Wall. 77, and *Frisbie* v. *Whitney*, 9 Wall. 189. Waiving for the present the particular objections to the defendant's claim already pointed out, I do not think the authorities cited support the defendant's contention. I have no doubt that, when, in compliance with the act of congress granting homesteads to actual settlers upon the public lands of the United States, a person qualified under the act makes a settlement thereon and then complies with said act, the land claimed by the settler ceases to be public lands of the United States, and that congress has not the power, without the consent of such settler, to appropriate said lands to any other public use whatever, nor has it in this instance assumed to exercise such authority. Such settlement and compliance with the act severs the land claimed as a homestead from the mass of public lands, and it is taken out of the act of congress of March 3, *supra.* This is the effect of the doctrine of *Wilcox* v. *Jackson*, 13 Peters, 498, and *Hastings & D. R. R. Co.* v. *Whitney*, 132 U. S. 357; and such is the construction given to this act in *Red River L. R. R. Co.* v. *Sture*, 32 Minn. 95. And this conclusion seems clearly deducible from the act itself for the reason it does not assume to grant the *possessory claims* of those who had acquired them prior to the time of com-

pliance with the act by a railroad company claiming the benefit of the act for the reason that the third section of the act provides for the condemnation of such *possessory claims.* This provision is a clear recognition of such claims as against any corporation claiming by title subsequent to their acquisition. But counsel contend that these views cannot be correct for the reason the United States have in a large number of cases maintained actions of trespass against homestead claimants for cutting timber off the lands claimed by them, and he cites *U. S.* v. *Taylor,* 35 Fed. Rep. 486, *U. S.* v. *Stores,* 14 Fed. Rep. 824, *U. S.* v. *Smith,* 11 Fed. Rep. 487, and *U. S.* v. *Cook,* 19 Wall. 591. It is true that after settlement by a homestead claimant and his incipient compliance with the act, his title is inchoate; he has that which will ripen into a perfect title by a complete compliance with the act, and in the meantime he is in under the right which has been conferred upon him by the United States. Neither the right to destroy the timber growing upon the land nor to use it for speculative purposes is conferred, and should he transcend the power conferred upon him by his grantor before his title has matured and become perfect, no reason is perceived why he might not be required to respond in damages for an act which is, in its nature, waste.

2. It appeared upon the trial in the court below that the plaintiff's entire claim was worth from $800 to $1,200. The jury gave him a verdict of $600 damages. A motion was made for a new trial, which was overruled by the court, in passing upon which the learned circuit judge said: "I am satisfied that in all cases where a corporation is a party, that more or less prejudice exists, sometimes for, but more frequently against, the corporation; and that juries frequently render unjust verdicts in such cases. In this case I am satisfied that the jury were prejudiced and that the verdict is excessive, but I do not know it, and therefore overrule the motion for a new trial." It would seem that this was enough to have given the defendant a new trial under subdivision 5 of section 235, Hill's Code.

That provision allows a new trial when excessive damages have been allowed, appearing to have been given under the influence of passion or prejudice; and while the finding of the court brings the case substantially within the provision, he saw proper to disallow the motion for a new trial, and we will not interfere with the action of the court in this particular case, for the reason that a new trial must be awarded for other reasons presently to be adverted to. Still, I am strongly inclined to think that when it does appear from the record that the damages are excessive, and when passion or prejudice influenced the jury in reaching the conclusion, the party injured is entitled to a new trial as a legal right, and to refuse it is reversible error. These facts would very rarely appear in the record as they do in this case. But while we have determined not to award a new trial in this case on account of such excessive damages and prejudice found by the court, their existence makes it all the more imperative on this court to look carefully into the record so far as errors are assigned, to ascertain if any errors occurred at the trial prejudicial to the appellant.

3. In this case no special damages are alleged. The plaintiff was therefore only entitled to recover such damages by reason of the unauthorized laying of the defendant's railroad track across his premises and the operation of the road as well as the actual damages he sustained by the breaking of his close. In such case the correct measure of damages is said to be the difference between the annual rental value of the premises with the railroad track down and operated as it is, and what the rental value of the premises would have been if the road had not been there. *Blesch* v. *The Chicago and Northwestern Railway Co.*, 43 Wis. 183. Of course this rule would not include special damages in a case where such damages are pleaded, and in this case it does not include the damages for the breaking of the plaintiff's close; but the latter item would only be such sum as would restore the premises to such a condition of safety for use as they were in before the breaking. No

special damages are alleged, and therefore none are recoverable.

The general tenor of instructions one and two, which were asked by the defendant and refused by the court, is in harmony with what is here said, and the substance ought to have been given, but in the particular form in which they were asked they left it to the jury to find out what was or was not specially pleaded. This was the province of the court and it did not err in refusing to give an instruution, which, in effect, left that question to the jury. But the defendant also asked the court to give the jury the following instruction, which was refused: ''The plaintiff having neither plead nor proved any special damages resulting from the alleged frightening of his horses, he can recover nothing from that cause.'' This instruction was refused, and such refusal was clearly error. It impliedly conceded more to the plaintiff than he was entitled to; that is, it seems to assume that if the plaintiff had alleged and proved something of that kind it would have formed a proper basis for a recovery, which may well be doubted. But whether that is so or not, such a claim was not included in the pleadings and could not be considered by the jury. Evidence which was properly excepted to was also allowed to go to the jury on this subject, which was also error. The case seems to have been tried, so far as appears, without any very definite rule as to its scope under the pleadings or the measure of damages, and entirely at variance with what is here said.

The judgment appealed from will therefore be reversed and the cause remanded to the court below for a new trial.