Argued February 20, denied April 21, 1914.

JONES *v.* McGINN.

(140 Pac. 994.)

Contracts—Rescission—Restoration of Consideration.

1. The general rule that a party seeking to rescind a contract for fraud shall restore the consideration does not apply where the property has been destroyed, is worthless, or is taken from him without his fault.

[As to necessity for return of consideration paid on repudiation of contract to convey land which is absolutely void, see note in Ann. Cas. 1914C, 898.]

Contracts—"Rescission."

2. "Rescission" means that both parties to a contract shall be wholly released, as though it had not been made.

Contracts—Rescission—Restoration of Consideration.

3. When courts cannot place the parties *in statu quo*, they are not precluded from granting relief from fraud; damages being given if either party can restore the property, and inability to restore resulting from the course of complainant when not aware of the fraud not preventing relief.

[As to how and within what time a contract may be rescinded, see note in 74 Am. Dec. 657.]

**Sales—Rescission—Restoration of Consideration.**

4.  Where a buyer offers to restore the goods received under a sale induced by fraud, and the seller absolutely refuses to receive them, the buyer will be relieved from the duty of actually returning or tendering them.

[As to rights of parties to a fraudulent or illegal transaction, see note in 34 Am. Dec. 735.]

**Contracts—Disposition of Cause—Proceedings in Lower Court—Sufficiency of Decree.**

5.  Where plaintiff received, under a contract with defendants, a lease of an apartment house and the furniture contained therein, incumbered by a chattel mortgage, and in a suit to rescind for fraud tendered the property into court and paid the rent till a decree in her favor for rescission, after which she refused to continue the payments, and the mortgage was foreclosed, and on appeal the decree was simply affirmed, the trial court, on receiving the mandate, properly entered a decree requiring defendants to surrender plaintiff's notes and mortgage for cancellation and reconvey the land received by them, though it had become impossible for plaintiff to place them *in statu quo*.

Department 2.    Original proceeding in Supreme Court.

This is proceeding for *mandamus* by Minerva A. Jones and C. M. Jones, her husband, against Henry E. McGinn, one of the judges of the Circuit Court of the State of Oregon for the Fourth Judicial District. The facts are fully stated in the opinion of the court.

DEMURRER OVERRULED: WRIT DISMISSED.

For plaintiffs there was a brief over the name of *Messrs. Manning, White & Hitch,* with an oral argument by *Mr. Sam White.*

For defendant there was a brief with oral arguments by *Mr. Allan R. Joy* and *Mr. John F. Logan.*

Opinion PER CURIAM.

This is an original proceeding in this court by writ of *mandamus* against the defendant, as judge of the Circuit Court of Multnomah County, to require him

to enter decree in that court in accordance with the mandate of this court in the case of *Owen* v. *Jones,* issued the 20th day of November, 1913. The controversy arose under the following condition of the last-named case: It was brought here on appeal by the defendants, and the decree of the Circuit Court was affirmed. The opinion is reported in 68 Or. 311 (136 Pac. 332). The defendants were owners of a lease upon an apartment house and of the furniture contained therein, and made a contract with the plaintiff to exchange the same for plaintiff's dwelling and two lots in Portland and certain promissory notes. That many false representations were made to the plaintiff by the defendants and their agents, and frauds perpetrated upon her, was fully established at the trial, being recited in the answer to the writ in this case. Immediately after plaintiff had completed the exchange, she learned of the misrepresentations and frauds of the defendants, and rescinded the trade, giving defendants notice thereof, and brought suit in the Circuit Court of Multnomah County to retract the trade, to recover her property, and to have canceled the notes she had given in the sum of $1,075, and to have defendants adjudged to take back their property. For that purpose plaintiff tendered the property into court. The furniture and the lease of the apartment house had been encumbered by the defendants by a chattel mortgage in the sum of $500, as security for the payment of the rent of $130 per month, which Owen paid until decree of the Circuit Court was rendered, covering a period of about seven months, when she refused to make further payments thereof, and tendered the property to the defendants. The rent thereafter being unpaid, the mortgagee foreclosed the chattel mortgage and sold the furniture, delivering it to the purchaser. The mandate of this court was simply an

affirmance of the decree of the Circuit Court; namely, that the contract be rescinded. When the mandate was received by the Circuit Court, conditions had changed, and the property in the rooming-house was no longer in the possession of the plaintiff, through no act of hers, and could not be returned by her to the defendants. The Circuit Court, after a recital of the conditions, rendered a decree upon the mandate to the effect that the contract be rescinded, and, it appearing that Edith Owen, since the commencement of the suit, had at all times while the property was in her possession, and until the same was taken from her possession by process of law, been ready and willing to turn it over to the defendants, and had at all times tendered back said property, ruled that the deed by Owen to Jones be canceled, and defendants ordered to execute and deposit with the clerk of the court a deed of conveyance to Owen of said lots 6 and 21, and to surrender for cancellation the Owen notes and the mortgage securing the same, together with possession of said lands. Defendants objected to said decree, insisting that, if Owen did not place defendant *in statu quo* by the delivery of the rooming-house and contents free from charge, she was not entitled to rescind the contract, and applied for this writ of *mandamus* to require the Circuit Court to enter the decree affirmed by this court. The judge of the Circuit Court answered the writ setting up the facts, to which a demurrer was filed. The foregoing constitutes the issue before us.

1. Plaintiff in this proceeding insists there is no exception to the rule that there can be no rescission of a contract unless the plaintiff in the suit for that purpose places the defendants *in statu quo*. The general rule for rescission of a contract for fraud requires that the party seeking to rescind shall restore the consideration he has received under the contract; but there are ex-

ceptions to this rule, many of which are given in 9 Cyc. 439; namely, where the property has been destroyed, is worthless, or is taken from him without his fault. In *Henninger* v. *Heald,* 51 N. J. Eq. 74 (26 Atl. 449), it is expressly mentioned that if the property is taken on a prior existing lien he is not required to restore it. Thus, in *Hammond* v. *Pennock,* 61 N. Y. 145, it is held the same property need not be returned. It is in the discretion of the equity court to decree what return shall be made. The same is held in *Jervis* v. *Berridge,* 28 L. T. (N. S.) 481.

2. Rescission means that both parties shall be wholly released from the contract as though it had not been made. The common law requires: First, that the parties seeking to rescind must return the consideration received before he can reclaim what he parted with; but this is not the only rule in equity, but the bill should offer to return if the court should so decree. It is said in note 95, page 441, of 9 Cyc.:

"The best-considered cases in equity go far to bear out the proposition that there is a remedy in equity to ask the court to rescind without requiring an absolute return before suit, wherever such a return would operate to enhance the completeness of the fraud or abandon the little indemnity that already exists."

This was the theory in *Crossen* v. *Murphy,* 31 Or. 114 (49 Pac. 858).

It is said in the text of 9 Cyc. 441:

"Since the doctrine that one must restore what he has received is so frequently used to shield the party guilty of the fraud, it is not strange that the courts have endeavored to put some limits to the doctrine itself."

3. When the courts cannot place the parties *in statu quo,* they are not precluded from granting relief from fraud: *Myrick* v. *Jacks,* 33 Ark. 425. Equity courts can go more on presumptive evidence than law courts.

If either party cannot restore the property, damages may be given; and, if the inability to restore happens by the course of complainant, it should not prevent his obtaining relief if he was not aware of the fraud: *Warner* v. *Daniels,* 29 Fed. Cas. 17,181 (1 Woodb. & M. 90). The complainant is entitled to rescission because of fraud, and it is immaterial that *statu quo* cannot be literally restored: *Brown* v. *Norman,* 65 Miss. 369 (4 South. 293, 7 Am. St. Rep. 663); *Sisson* v. *Hill,* 18 R. I. 212 (26 Atl. 196, 21 L. R. A. 206); *Scott* v. *Perrin,* 7 Ky. (4 Bibb.) 360; *Mincho* v. *Bankers' Life Ins. Co. of City of New York,* 124 App. Div. 578 (109 N. Y. Supp. 179); *Placer County* v. *Freeman,* 149 Cal. 739 (87 Pac. 628).

4. It is further held that, if the buyer offers to restore the goods received by him under a sale induced by fraud, and is met by an absolute refusal of the seller to receive them if tendered, he will be relieved from the duty of actually returning or tendering them: *Milliken* v. *Skillings,* 89 Me. 180, 183 (36 Atl. 77); 9 Cyc. 441, n. 96.

5. Here the defendant has continuously and strenuously resisted a rescission. It appears that the plaintiff in the suit for rescission paid the rent on the house until the day of the decree of the Circuit Court in her favor, and then demanded that the property be redelivered at once, and that she be relieved of further liability. It was thereafter, in May, 1913, that the property was taken on foreclosure; Mrs. Owen contending that the house could be run only at a great loss, and was therefore worthless; and, the decree so requiring the rescission of the contract, plaintiff made no further claim to the property, contending that it was thereafter at defendant's risk. Defendants by the appeal delayed the execution of the decree for more than a year, thus attempting to require plaintiff to run

the apartment house in the meantime, which, it is alleged, would have been at a loss of more than $100 per month. This condition was created by the defendants' appeal, which, we agree with Judge McGinn, equity should not require. There is no question in this case but that defendants secured the contract sought to be rescinded by gross imposition and fraud, and to adopt defendants' theory of the case would be to impose upon Mrs. Owen a loss greater than the value of the whole property she thought she was to receive. She has cared for the property and paid all expense therefor until the decree was rendered in her favor in the Circuit Court in November, 1912, which is all that should be required. The situation is not an ordinary one in which rescission is sought. In this case evidently the goodwill of the business and the lease of the house in which it was conducted were the principal values passing. The furniture had but little value if removed from the house. The payment of the rent, gas bill, light bill, expense of scavenger, and cost of heating were all frequent, inevitable and relentless as incident to the business. It was in the power of the defendants to delay the time to assume them, and thus work a hardship upon the plaintiff, if not actually to render her bankrupt, making it impossible for her to retain the property for redelivery. These are matters not involved in the ordinary sale of personal property, and litigants must act at their peril in such cases as a mistake may result in great loss. It is held in *Neblett* v. *MacFarland,* 92 U. S. 101 (23 L. Ed. 471):

"A party seeking to set aside a sale of shares is not bound to pay calls on them to prevent forfeiture after filing the bill; * * the party, in substance, redelivering the bond as a condition of obtaining such reconveyance, it would seem that a defense of this character could not be a good one. But of this the appellant must take his chance. If the bond has become thus

impaired, it is no worse than the loss of a perishable article, or the forfeiture of shares during the litigation. These circumstances do not alter the rule of law.''

The contract must be rescinded *in toto;* that is, the parties must be wholly released from it, though not necessarily placed *in statu quo.* That is often impractical and would render rescission impossible in many cases: See *Gatling* v. *Newell,* 9 Ind. 572; *Smith* v. *Love,* 64 N. C. 439. So equity adapts itself to the circumstances of the case in rescission: *Bell* v. *Merrifield,* 109 N. Y. 202 (16 N. E. 55, 4 Am. St. Rep. 436). Defendants had ample opportunity while the property was intact to protect themselves—namely, after the decree in plaintiff's favor in the Circuit Court—and equity should require that the delay caused by defendants should be at their risk. Therefore we find that there was no error in the decree entered by the Circuit Court on the 24th day of January, 1914, which is as follows:

''It is hereby ordered, adjudged, and decreed that the contract and transaction of sale, trade, or exchange entered into between plaintiff and defendant Minerva A. Jones on or about April 9, 1912, be and the same is hereby declared fraudulent and void, and the same is hereby rescinded, canceled, annulled, and held for naught; and it further appearing to the court that the plaintiff, Edith Owen, since the commencement of this suit, has at all times, while the property was in her possession and until the same was taken from her possession by process of law, been ready and willing to turn over and deliver back to the defendants all property received from defendants in the above-mentioned transaction of exchange, and has at all such times offered and tendered back the said property in the same good order and condition in which it was received, reasonable use and wear thereof excepted, and that such offer and tender was made in open court upon the trial of this cause, and has never been accepted by the

defendants; and it further appearing to the court that, since the decree of this court was entered herein, and while this cause was pending in the Supreme Court of the State of Oregon upon appeal from this court, a certain mortgage placed upon the said rooming-house and furnishings by the defendants prior to the date of the fraudulent transfer of the said property to this plaintiff and existing on the date thereof became due and was foreclosed in this court by suit in equity, and that these defendants were duly served with summons and complaint in said foreclosure suit, and made no appearance therein, but suffered the said mortgage to be foreclosed as by default; and it further appearing that said rooming-house and furniture therein was taken from the possession of plaintiff by due process of law under said foreclosure proceedings, and was duly and regularly sold under the decree of this court in accordance with the laws of the State of Oregon in such cases provided to satisfy the said mortgage so placed upon the property by these defendants, as aforesaid, and that the defendants made no effort or attempt to redeem the said property or to protect their rights therein, if any they had or claimed, but knowingly waived the same, and that the said rooming-house and the furniture therein has passed into the hands of innocent purchasers, and that, by reason of the premises, and without any fault or neglect upon the part of plaintiff, it has become and is impossible for plaintiff at this time to deliver over to the defendants the said rooming-house or contents, and that plaintiff, Owens, has never encumbered said property in any manner, save and except her chattel mortgage given to defendants for the purchase price thereof, which said chattel mortgage has been and is hereby canceled.

"(2) That the deed executed by the plaintiff, Edith Owen, to the defendant Minerva A. Jones on or about the 9th day of April, 1912, for lots six (6) and twenty-one (21) in block three (3) of Cloverdale tract, in Multnomah County, Oregon, be, and the same is, hereby canceled of record, and the said defendant Minerva A. Jones is hereby ordered and directed forthwith to execute and deposit in this court a reconveyance with

full covenants of warranty, reconveying to the plaintiff, Edith Owen, the said lots six (6) and twenty-one (21) in block three (3) of said Cloverdale tract, free from all debts, liens, encumbrances, or damage done, made, or suffered by the said defendants, or either of them, or any person acting under, by, or through them, and the clerk of this court is hereby directed forthwith to deliver the said deed of conveyance to the said plaintiff, Edith Owen.

"(3) That the said defendants, Minerva A. Jones and C. M. Jones, forthwith deposit in this court the 27 promissory notes so executed by the said plaintiff, Edith Owen, to the said defendant Minerva A. Jones on the 9th day of April, 1912, the same being 25 promissory notes for $40 each and one note for $55 and one note for $20, bearing interest at 8 per cent per annum, and payable 30 days apart, the first note being payable May 9, 1912, and that thereupon the clerk of this court is directed to cancel the same and to return the said canceled notes to the plaintiff, Edith Owen, and that a certain chattel mortgage executed by Edith Owen to the said Minerva A. Jones on the 9th day of April, 1912, to secure said 27 notes, and covering the furniture and fixtures then and now being in the said apartment house at 927 Union Avenue, Portland, Oregon, be, and the same is, hereby canceled, annulled, and discharged of record; and it is further ordered that the County Clerk of Multnomah County, Oregon, make the proper entries canceling upon the records of Multnomah County, Oregon the said chattel mortgage and the above-described deed from Edith Owen to the said Minerva A. Jones for the said real property, to wit: Lots six (6) and twenty-one (21) in block three (3), Cloverdale.

"(4) It is further ordered and decreed that the said defendants, Minerva A. Jones and C. M. Jones, forthwith deliver up possession of the said lots six (6) and twenty-one (21) in block three (3), Cloverdale tract, with the dwelling-house thereon, to the plaintiff, Edith Owen, and also deliver to the said Edith Owen all furniture left therein by Edith Owen on the 9th day of April, and taken possession of by these defendants,

or either of them, all in good order and condition, reasonable use and wear thereof excepted.

"(5) It is further ordered and adjudged that the plaintiff, Edith Owen, have and recover of and from the defendants, Minerva A. Jones and C. M. Jones, and from their sureties an appeal, to wit, the Globe Indemnity Company of New York, her costs as taxed in the Circuit Court, to wit, the sum of $35.35, with interest at 6 per cent thereon from November 12, 1912, together with her costs and disbursements taxed in the Supreme Court herein, amounting to the sum of $43, and that execution forthwith issue out of this court in favor of the plaintiff, Edith Owen, and against the defendants, Minerva A. Jones and C. M. Jones, and the Globe Indemnity Company of New York (defendants' sureties on appeal) therefor.

"Dated January 24th, 1914.

"[Signed]  Henry E. McGinn, Judge."

The demurrer to the return is overruled and the writ is dismissed.    Writ Dismissed.

---

Motion to dismiss denied September 9, 1913.