Argued March 11, modified and affirmed April 13, rehearing denied June 1, 1926.

## J. L. BILLUPS ET AL. *v.* MONTAGU COLMER.

(244 Pac. 1093.)

**Election of Remedies—Though One Induced to Enter Contract by Fraud may Affirm and Sue for Damages or Disaffirm and Secure Equitable Relief, Adoption of One Remedy is Exclusion of the Other.**

1. One induced to enter contract by fraud has election of remedies, either to affirm contract and sue for damages or to disaffirm and be reinstated in position in which he was before it was made, but remedies are inconsistent, and adoption of one is exclusion of the other.

**Cancellation of Instruments.**

2. Court of equity in proper case will rescind contract on ground of fraud, though there may be an inadequate or incomplete remedy at law.

**Public Lands—Railroad Which, After Receiving Deed from Homestead Claimant Abandoning Land, Completed Road Before Subsequent Homestead Entry, Held Entitled to Right of Way Granted by Congress (Act Cong. March 3, 1875 [U. S. Comp. Stats., §§ 4921–4926]).**

3. Where homestead claimant gave railroad deed to 100-foot right of way, but abandoned land without obtaining title, railway which completed road before another made homestead entry for the land *held* to have right to 200-foot right of way under Act Cong. March 3, 1875 (U. S. Comp. Stats., §§ 4921–4926), superior to right of such homestead entryman, though latter's patent contained no reservation of such right of way.

---

1.  See 9 R. C. L. 958.
2.  See 4 R. C. L. 494.

Exchange of Property—Land Owner, Stating That Railroad Right
of Way was One Hundred Feet Wide, and not Disclosing Rail-
road's Claim to Two Hundred Feet as Evidenced by Lease, Held
Guilty of Fraud Entitling Plaintiff to Rescission of Contract to
Exchange Land.

4. Defendant and his caretaker, in informing plaintiff as to rail-
road's right of way across land to be exchanged, *held* guilty of
fraudulent representation in stating that it was 100 feet wide and
failing to disclose that its width, as evidenced by railroad's lease
to caretaker and within knowledge of both, was 200 feet, so that
plaintiff was entitled to rescission of contract to exchange, since
one conveying false impression by disclosing same facts and conceal-
ing others, is guilty of fraud.

Appeal and Error.

5. In reviewing disputed questions of fact, findings of trial court
will be given great weight.

Public Lands—Marking Width of Railroad Right of Way by Section
Foreman Held not to Overcome Grant of Congress (Act Cong.
March 3, 1875 [U. S. Comp. Stats., §§ 4921–4926]).

6. Fact that section foreman marked railroad's right of way as
100 feet wide, with posts at temporary private road crossing, *held*
insufficient to overcome grant to railroad of 200-foot right of way
under Act Cong. March 3, 1875 (U. S. Comp. Stats., §§ 4921–4926).

Exchange of Property—False Statement as to Width of Railroad
Right of Way as Stated in Lease Held Basis for Charge of
Fraud in Exchange of Land.

7. Statement by defendant's caretaker that lease of railroad
right of way across land to be exchanged described it as 50 feet on
either side of track, when it was in fact described as 200 feet
wide, *held* basis for charge of fraud, though statement as to right
of way is expression of legal opinion, for misstatement of law
accompanied by misrepresentation of fact may be made basis for
such charge.

Exchange of Property—Suit to Rescind Contract for Exchange of
Land, Brought Thirteen Months After Contract was Made, Held
Brought Within Reasonable Time, Where Misrepresentation
was not Discovered for Seven Months.

8. Suit to rescind contract for exchange of land, brought thirteen
months after execution of such contract, *held* brought within reason-
able time, where there was no material change in value of property,
and plaintiff did not discover defendant's misrepresentation for
seven months.

Appeal and Error—Defendant Who was Placed in Statu Quo by De-
cree When Contract to Exchange Land was Rescinded cannot
Complain of Plaintiff's Use of Property.

9. Where decree for plaintiff in suit to rescind contract for ex-
change of land placed defendant *in statu quo*, he could not success-

---

5. See 2 R. C. L. 203.

fully complain of lease of mill on his property by plaintiff and sale and removal of machinery.

Exhange of Property—Decree or Plaintiffs in Suit to Rescind Contract for Exchange of Land Should not Include Interest on Plaintiff's Payments Prior to Decree Where They were in Possession.

10. Decree for plaintiffs, in suit to rescind contract for exchange of land, should not include interest on payment made to defendant from time of payment to time of decree, where plaintiffs had been in possession of land they acquired.

---

Appeal and Error, 4 C. J., p. 898, n. 86.
Cancellation of Instruments, 9 C. J., p. 1173, n. 2, p. 1203, n. 84, p. 1204, n. 93.
Fraud, 26 C. J., p. 1074, n. 42, 43, p. 1075, n. 44, 50, p. 1207, n. 87, p. 1209, n. 98, p. 1213, n. 57, 61, p. 1215, n. 81; 27 C. J., p. 17, n. 22, p. 18, n. 33, 40, p. 69, n. 30.
Public Lands, 32 Cyc., p. 989, n. 7, p. 990, n. 15, p. 991, n. 20, p. 994, n. 50, p. 996, n. 76.
Vendor and Purchaser, 39 Cyc., p. 1450, n. 40, p. 1502, n. 79.

From Multnomah: GEORGE W. STAPLETON, Judge.

Department 2.

This is a suit by J. L. Billups and Louise C. Billups, his wife, to rescind a contract of exchange of real property entered into between the plaintiffs and defendant on August 9, 1921. A decree was rendered in favor of plaintiffs, and defendant appeals.

By the terms of the contract, Billups agreed to purchase from Colmer a tract of land in Tillamook County, consisting of 143.85 acres, more or less, excepting therefrom the right of way of the Pacific Railway and Navigation Company, for the sum of $6,100. The plaintiffs conveyed to the defendants a house and lot in Portland, Oregon, at the agreed price of $2,800; $1,000 paid in cash, and a note given for $2,300 for the balance of the Tillamook property.

The plaintiffs allege that the defendant, by his caretaker, one Morrison, represented to plaintiffs that there were five acres of cleared land on said premises, and that the right of way of the railroad was 100

feet in width; that a certain mill building was on the land; that the orchard was on the land so purchased, except one row of trees, all of which representations were false; that there were not to exceed two acres of cleared land on the tract; that this railroad right of way was 200 feet in width; and that the mill building was not located on the land but on the right of way.

The defendant admits that E. W. Morrison stated to plaintiffs that the right of way of said railroad was 100 feet in width and alleges that he honestly believed, and now believes, that was the true width, and denies the other representations.

Defendant avers that in making the purchase of the Tillamook County property, plaintiffs made their own independent investigation of the property in question, and of the title to said property.

Plaintiffs took possession of the property about the 16th of August, 1921, and resided thereon until about the time of the commencement of this suit, on September 5, 1922, when a stipulation was entered into, to the effect, that the plaintiffs should remain on the property pending the litigation without prejudice to their rights.

MODIFIED AND AFFIRMED.    REHEARING DENIED.

For appellant there was a brief over the name of *Mr. David Robinson,* with an oral argument by *Mr. Arthur A. Goldsmith.*

For respondent there was a brief over the name of *Mr. W. F. Magill,* with an oral argument by *Mr. Burns Powell.*

BEAN, J.—A history of the transaction is about as follows:

The parties first met through an advertisement published by defendant. Mr. Billups called on Mr. Colmer in answer to the advertisement on July 24, 1921. A meeting was arranged on the next day, when Mr. and Mrs. Billups called upon the defendant, who was a photographer in Portland, Oregon. As to just what occurred, there is some conflict in the testimony. Mr. Colmer showed them photographs of the dwelling on the land and told them there were five acres of cleared land and an orchard on the place, and also a shingle-mill. The plaintiffs went to look at the place, going by train, there being no road to the land. They spent about two days there with their son, and examined the place.

The property is located at a station called Maples, on the Southern Pacific line between Portland and Tillamook, in the Nehalem River canyon. The railroad runs through the property for a distance of approximately one-half mile. On the south side of the railroad right of way is the Nehalem River.

On the other side of the right of way, between the sidehill and the track, and within a few hundred yards of the house, is the cleared land in question and the dwelling-house and cottage, chicken-houses and other small outhouses. On the south side of the railroad and a few hundred yards from the house, there is a rough building on posts built of shakes, formerly used as a shingle-mill, and near the shingle-mill are a few shacks.

The plaintiffs base their contentions of a 200-foot right of way on the act of Congress of March 3,

1875, known as the Railroad Right of Way Act, which provides, among other things, as follows:

"Section 1. That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any State or Territory, except the District of Columbia, or by congress of the United States, which shall have filed with the secretary of the interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road * * ." See 8 Fed. Stats. Ann. 789.

Section 4 of the act of Congress requires the railroad company desiring to secure the benefit of the act, to file with the Register of the Land Office for the district where such lands are located a profile of its road within twelve months after the survey thereof, if the same be upon surveyed lands, or if it is upon unsurveyed lands, within twelve months after the survey thereof.

The defendant claims that the railroad company did not take the 200-foot right of way by virtue of this act, but took a right of way 100 feet wide.

It appears that Clarence Doughney, a homestead claimant who was on the land prior to the construction of the railway and had no title thereto, executed a deed to the railroad company of a hundred foot right of way, which deed is mentioned in the abstract of title furnished by defendant to plaintiffs. Afterward Doughney abandoned the land and relinquished the same on July 5, 1911. On the same day Sidney A. Smith made a homestead entry for the land and a patent was issued to him on January 13, 1913.

The railroad construction over the land was finished in May 1911, before the homestead entry of

Smith was made. Since that time they have run trains over the same. It appears from the record that the railroad company set posts on the premises in question, on a private crossing near the old mill, 50 feet on each side of the center line.

Mr. W. H. Lee, a clerk in the Right of Way Department of the Southern Pacific Company, was called as a witness for plaintiff, and testified to the effect that the company claimed a right of way under the granting act of Congress of March 3, 1875. Articles of incorporation and proof of organization of the Pacific Railway & Navigation Company were filed with the Department of the Interior. There had been no map filed in the local land office.

Mr. Billups testified, in substance, that in March, 1922, he applied to the Southern Pacific Company for a cultivation lease of the right of way, and learned that a lease had been issued by the railroad company to E. W. Morrison, who conveyed the land to Colmer soon after he purchased the same from Smith. The right of way lease was executed on November 24, 1919, for one year, and was extended until November 24, 1921, on the payment of $1, the annual rental. The lease from the Southern Pacific Company, the successor of interest of the Pacific Railway & Navigation Company, to E. W. Morrison, the caretaker of defendant, had attached thereto a copy of a map, showing the right of way over the land in question to be 200 feet in width. Colmer, the defendant, witnessed Morrison's signature to the lease.

The defendant Colmer sent the plaintiffs to examine the land and told them Mr. Morrison, his caretaker, would show them the place, and after their

return from the farm, as plaintiffs state, defendant assured them they could rely upon Mr. Morrison's statement to them. Morrison called plaintiff's attention to the right of way location near the mill building, and while conversing with the plaintiffs and their son was asked by Mr. Billups how much of a right of way the railroad company had and how far up the lawn, meaning in front of the house, it would come, to which he replied, he guessed about 100 feet, but when the plaintiffs exclaimed in surprise that that would bring the right of way up to the front steps of the bungalow, Mr. Morrison replied that he then remembered it was only 50 feet; that his lease of the right of way from the railroad company stated 50 feet, and he then pointed out a maple tree, about halfway between the bungalow and the railroad track, and approximately 50 feet from the railroad track, as marking the extent of the right of way.

The trial court saw and heard the witness when testifying, and found in effect that the contention of plaintiffs was true. Colmer and Morrison were good friends, and were both interested in the purchase of the land from Sidney A. Smith when it was conveyed to E. A. Morrison. Soon afterward the land was conveyed by Morrison to defendant Colmer, as Colmer had furnished the larger part of the money for the purchase thereof, Mr. Morrison stating that he did not desire to put any more money into the place and had no further interest therein. However, he resided on the place and cared for the same, and was the agent of Colmer in making the representations in regard to the land. At the time he informed plaintiffs the railroad right of way was 50 feet on each side of the center of the railroad

track he had in his possession a valid existing lease from the Southern Pacific Company of the right of way over the land 200 feet in width, except 15 on each side of the railroad. Both Morrison and defendant Colmer admit that they knew about this lease and that the same described the railroad right of way as being 200 feet in width, or that the railroad company claimed a 200-foot right of way through the land. But they testified that they believed the right of way to be 100 feet in width. A map thereof attached to the lease plainly portrays a right of way 200 feet wide. This lease, or map, was not shown to plaintiffs, but was concealed from them at the time Morrison made the statement of the right of way being 50 feet on either side of the railroad, as shown by his lease.

1. Defendant contends that plaintiffs' remedy is at law and not in equity and therefore the complaint is insufficient. A party induced to enter into a contract by fraud has an election of remedies, either to affirm the contract and sue for damages or to disaffirm it and to be reinstated in the position in which he was before it was made; but the remedies are inconsistent and the adoption of one is the exclusion of the other: *Seeck* v. *Jakel,* 71 Or. 46 (141 Pac. 211, 46 L. R. A. 1915A, 679); *Dundee Mtg. Co.* v. *Goodman,* 36 Or. 453, 456 (60 Pac. 3); *Elgin* v. *Snyder,* 60 Or. 297, 302, 303 (118 Pac. 280); *Copeland* v. *Tweedle,* 61 Or. 303 (122 Pac. 302); *Taylor* v. *Tripp,* 97 Or. 611, 619 (191 Pac. 1054); *Scott* v. *Walton,* 32 Or. 460, 464 (52 Pac. 180).

2. Courts of equity in a proper case will rescind a contract on the grounds of fraud even though one may have a remedy at law, where the latter remedy

is inadequate or incomplete: Black on Rescission and Cancellation, vol. 2, § 646; *McCabe* v. *Kelleher,* 90 Or. 45 (175 Pac. 608); *Williamson* v. *Hurlburt,* 99 Or. 336 (195 Pac. 562, 563); *Crossen* v. *Murphy,* 31 Or. 121, 122 (49 Pac. 858).

3. The width of the right of way is the crux of this suit. The lease contained this stipulation:

"The lessee hereby acknowledges the title of the railroad company and its lessor, in and to the premises described in the lease and agrees never to assail or resist said title."

Defendant submits that, "where a homestead claimant has settled on the public lands of the United States, such lands are withdrawn from the public domain, and a railroad company which thereafter complies with the provisions of the act of 1875 does not acquire a right of way through the homestead claim of such settler or his successors in interest." Citing *Larsen* v. *O.-W. R. & N. Co.,* 19 Or. 240, 243 (23 Pac. 974); *Washington & Idaho Ry. Co.* v. *Osborn,* 160 U. S. 103 (40 L. Ed. 346, 16 Sup. Ct. Rep. 219, see, also, Rose's U. S. Notes); *Spokane Falls Ry. Co.* v. *Ziegler,* 167 U. S. 65, 67 (42 L. Ed. 79, 17 Sup. Ct. Rep. 728).

Under the act of March 3, 1875, the actual construction of a railroad is equivalent to filing a profile of the road. The grant of a 200-foot right of way becomes definitely fixed by the actual construction of a railroad before the filing of the profile thereof. In other words, the statute enables the railroad company to secure the benefit of the grant, after filing articles of incorporation and proof of organization, by actual construction of its road, or in advance of construction, by filing a profile as provided in Section 4 of the act: *Jamestown etc. R. R. Co.* v. *Jones,* 177

U. S. 125–132 (44 L. Ed. 698, 20 Sup. Ct. Rep. 568, see, also, Rose's U. S. Notes); *Denver etc. R. R. Co.* v. *Hanoum,* 19 Colo. 162 (34 Pac. 838); *Alexander* v. *Kansas, Ft. S. & M. R. R. Co.,* 138 Mo. 464 (40 S. W. 105, 107); *Washington etc. R. R. Co.* v. *Coeur d'Alene,* 52 Fed. 765.

It was held by the Supreme Court of the United States, and followed by several state courts, in effect, that under the act of March 3, 1875, a railroad is constructed through land, subject to possessory rights of individuals, but where a pre-emption or homestead entryman relinquishes his right before perfecting title and after the railroad company has complied with the act and on the date of relinquishment another person makes a homestead entry for the same land, the railroad company's rights are superior to the last homestead entryman: *Jamestown etc. R. R. Co.* v. *Jones, supra; Alexander* v. *Kansas City etc. R. R. Co., supra; Bonner* v. *Rio Grande & So. R. R. Co.,* 31 Colo. 446 (72 Pac. 1065, 1067); *Hamilton* v. *Spokane,* 3 Idaho, 164 (28 Pac. 408); *Lewis* v. *Rio Grande Western R. R. Co.,* 17 Utah, 504 (54 Pac. 981).

The rule contended for by counsel for defendant is that the subsequent failure of the homestead claimant to comply with the acts of Congress, or his actual abandonment of the claim, does not give the railroad company any claim through or to such lands. The rule enunciated in the case of *Kansas City R. R. Co.* v. *Dunmeyer,* 113 U. S. 629 (28 L. Ed. 1122, 5 Sup. Ct. Rep. 566, see, also, Rose's U. S. Notes), and other land grant cases cited by defendant, is not applicable to the right of way law of March 3, 1875. The rule contended for by defendant applies

to the grant of land in aid of the construction of a railroad and not to the grant of a right of way under the act of March 3, 1875. This is clearly shown in the case of *Jamestown etc. R. R. Co.* v. *Jones, supra.* Therefore, the railroad of the Pacific Railway & Navigation Company, now owned by the Southern Pacific Company, having been completed through the land in March 1911, before the homestead entry of Sidney A. Smith for the land was made, the right of the railroad company to a right of way over the land under the act of Congress of March 3, 1875, is superior to the right of Smith, the homestead entryman, or his grantee. The fact that a patent from the United States government to Sidney A. Smith, contained no reservation of a right of way of the railroad is immaterial: *Lewis* v. *Rio Grande, supra.*

4. One conveying a false impression by the disclosure of some facts, and the concealment of others, is guilty of fraud. It is the duty of one to give information and to make a full truthful disclosure, which shall have no tendency to deceive or mislead, or in any other way to deceive by a combination of representation and concealment, in inducing one to enter into a contract: 26 C. J., pp. 1075, 1211 et seq.; *Boelk* v. *Nolan*, 56 Or. 229 (107 Pac. 689).

When the defendant and his caretaker, Morrison, undertook to inform plaintiff of the facts concerning the right of way, they were in duty bound to disclose all of the information they had. Their failure to disclose the width of the right of way as shown by the lease from the railroad company to Morrison and within the knowledge of both of them brings their representations clearly within the rules regarding fraudulent representations: 26 C. J. 1074.

Mr. Morrison testified that he told plaintiffs there were approximately three acres of cleared land on the place. Plaintiffs each testified, very emphatically, that both Mr. Morrison and defendant Colmer told them five acres or more were cleared. The examination made by plaintiffs of the land would perhaps cast responsibility upon them of estimating the amount of cleared land for themselves. However, the statement of Mr. Morrison, who was a timber cruiser and civil engineer and well acquainted with the land, no doubt had considerable influence upon the plaintiffs in making the contract.

The plaintiffs did not rely upon the representations as to the quantity of cleared land alone. The defendant had no right to sell to the plaintiffs land which was included within the right of way of the railroad company. The area of cleared land is small and the number of acres that can be cleared, at great expense, on the tract is only about 20 acres. The real trouble is, that by taking the right of way of 200 feet in width, it would embrace nearly all of the orchard and bring the line in close proximity to the bungalow on the land, and in fact ruin the place for ordinary purposes.

5. Upon the disputed points in the case, the learned and experienced trial judge was in a better position to pass upon the question after seeing and hearing the witnesses than is this court from a reading of the cold type, and the findings of the trial court are entitled to great weight.

Defendant claims that he believed the railroad right of way was only 100 feet in width. The fact that both he and his agent Morrison knew that the South-

ern Pacific Railway Company claimed a 200-foot right of way over the tract of land and leased the larger part thereof for agricultural purposes, to be used in connection with and for the benefit of the place, and that they failed to inform the defendant thereof, but on the other hand falsely represented that the right of way as shown by the lease was 50 feet on either side of the tract, together with the other evidence in the case, was sufficient for the trial court to make the following findings of fact:

"That prior to the consummation of said purchase, the defendant pointed out to plaintiffs the lines of said Tillamook County land and the lines of the right of way of the railroad crossing said land, and stated and represented to plaintiffs that there were five acres of cleared land on said premises, and that the right of way of the said railroad was only 100 feet in width, to wit: 50 feet on either side of the center of said railroad, as the same was then located; that a certain mill building was on the land purchased by plaintiffs, and that the orchard was all on the land so purchased, except one row of trees, all of which statements and representations were false and were known by the defendant to be false at the time they were made, and were made for the purpose and with the intention of inducing the plaintiffs to consummate the purchase of said land.

"That said statements and representations were false and untrue in that there were not to exceed two acres of cleared land on the tract so purchased; that the railroad right of way was 200 feet in width, to wit: 100 feet on each side of the center line of said railroad; that the mill building pointed to plaintiffs was not located on the land purchased, but on the right of way of said railroad; and that none of the orchard, except one row of trees, was located on the land purchased by plaintiffs."

6. That there was a grant by the United States to the railroad company of a right of way over the land 200 feet in width, and about one half a mile in length, cannot be controverted. For the purpose of this case it is not sufficient in order to overcome such grant to show that a section foreman marked the right of way as 100 feet wide with posts, at a temporary private road crossing near the old mill.

The attorney who examined the abstract of title of the land for plaintiff could not determine therefrom the width of the railroad right of way and so informed plaintiffs, and they relied wholly upon the representation of defendant in regard thereto.

Regarding the question of the right of way of the railroad company under the act of 1875, defendant cites the case of *Larsen* v. *Oregon R. & N. Co.*, 19 Or. 240 (23 Pac. 974, 977), particularly at page 246, and quotes the following language:

"Such settlement and compliance * * (by homestead claimant) severs the land claimed as a homestead from the mass of public land, and it is taken out of the Act of Congress of March 3."

That was a case where the homestead entryman was in possession of the land at the time the right of the railroad company was claimed to have attached. He did not abandon or relinquish his right afterwards, as was done in the case at bar. When Doughney relinquished his right in July, 1911, the land was then vacant. The road was constructed and the right of the railroad company to a right of way, under the act of March 3, 1875, attached before Smith made his homestead entry.

7. Defendant argues that the statement in regard to the right of way was the expression of a legal

opinion. We find in the annotation in 9 A. L. R. 1062, that misstatements of law alone will not constitute fraud, but when such misstatements are accompanied by concealment or misrepresentation of facts, they may be made the basis of a charge of fraud: *Herman* v. *Hall* (1897), 140 Mo. 270 (41 S. W. 733); *Holt* v. *Gordon* (1915, Tex. Civ. App.), 176 S. W. 902; *Shuttler* v. *Brandfass* (1895), 41 W. Va. 201 (23 S. E. 808). See, also, *Lamb* v. *Lamb* (1891), 130 Ind. 273 (30 Am. St. Rep. 227, 30 N. E. 26). The statement that the lease of the right of way from the Southern Pacific Company described the easement as 50 feet on either side of the center of the railroad was a statement of fact. The true width was thereby concealed from plaintiffs.

8. Defendant maintains that the suit was not commenced within a reasonable time after the discovery of the fraud. The contract of exchange of the properties was entered into on August 9, 1921. The amended complaint herein was filed September 5, 1922. Plaintiffs had no information in regard to the true width of the right of way, or that the mill building and orchard, except one row of trees, were not on the land conveyed to them until March, 1922. Mr. Billups immediately consulted an attorney, who proceeded to investigate the matter. It took some time to do so, and to communicate by letter with plaintiffs, who resided upon the isolated Tillamook farm. The question of the right of way is an involved question of law and fact. It cannot be said that plaintiffs slept upon their rights, when all of the facts are taken into consideration. The evidence does not indicate any material change in the value of the property between the date of the contract and the

commencement of this suit. It does not appear that the condition changed materially by reason of the short lapse of time. Some delay after July 14, 1922, was caused by an attempt of the attorneys for the parties to settle the controversy. We conclude that under all the circumstances, the suit was instituted within a reasonable time after the discovery of the fraud. See *Bonnelli* v. *Burton,* 61 Or. 429, 437 (123 Pac. 37); *Wills* v. *Nehalem C. C. Co.,* 52 Or. 70 (96 Pac. 528); *Larsen* v. *Lootens,* 102 Or. 579 (194 Pac. 699, 203 Pac. 621).

9. Defendant complains that in November, 1921, plaintiffs executed a lease of a portion of the land, where the old mill building and bunkhouses are located, which was practically all a portion of the right of way, for a period of one year, with the privilege of renewal. The property was to be used for mill purposes only. The intention of operating the mill was abandoned and the machinery sold and removed in April, 1922. The lease was not renewed and expired by limitation November 1, 1922.

Under the decree of the Circuit Court the defendant is receiving all of the property conveyed to plaintiffs, free from encumbrances. He was thereby placed *in statu quo.* See *Jones* v. *McGinn,* 70 Or. 236 (140 Pac. 994).

All through the record the defendant concedes that the railroad company has a right of way through the land 100 feet in width. His counsel argues that the railroad company has no right to a 200-foot right of way. If the railroad company has a right of way over the land, as defendant admits, it is by virtue of the act of Congress of March 3, 1875. That act

provides for a grant of a right of way 200 feet in width.

Plaintiffs did not contract with defendant for a right to lease a large portion of the land from the railroad company. They were entitled to a fair, marketable title to the land. If the railroad company, on account of some logging operations, or for any reason, should desire to construct a side-track along its road, on the 200-foot right of way over the land, the owner of the land would be in a poor position to resist the same. The assertion of its title by the railroad company and the practical recognition of the same by defendant, and the submission of plaintiff thereto, would, under the circumstances of this case, seem to be equivalent to an eviction.

10. The defendant complains that the Circuit Court allowed the plaintiffs interest on the $1,000 payment and on the interest payment made by plaintiffs to defendant. In view of the fact that plaintiffs had the possession of the land for a time, this interest on those amounts from the time of payment to the time of rendition of the decree of the Circuit Court will be eliminated.

With this modification, the decree of the trial court is affirmed. Plaintiffs will recover their costs and disbursements in both courts.

MODIFIED AND AFFIRMED.    REHEARING DENIED.

McBRIDE, C. J., and BROWN and BELT, JJ., concur.