Argued and submitted January 13, reversed and remanded with instructions April 23, reconsideration denied June 6, petition for review denied June 24, 1986 (301 Or 241)

# NEIDERMEYER,
*Appellant,*

*v.*

# LATIMER et al,
*Respondents.*

(83-6-385; CA A33600)

717 P2d 1265

Christopher A. James, Portland, argued the cause for

appellant. On the brief were Michael A. Lehner and Mitchell, Lang & Smith, Portland. With him on the reply brief was Barry F. Shanks, Portland.

Gregory K. Zeuthen, Oregon City, argued the cause for respondents. With him on the brief were Michael D. Walsh and Hutchison, Hammond & Walsh, Oregon City.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff brought this action, *inter alia,* for rescission, on the ground of innocent misrepresentation, of the contract under which she purchased a cabin from defendants. Defendants counterclaimed for the unpaid balance of the purchase price. The trial court entered judgment for defendants on plaintiff's claim and on the counterclaim, and plaintiff appeals.

The parties entered into the contract and plaintiff took possession of the cabin in the spring of 1982. Plaintiff had learned that the cabin was for sale through a multiple listing which, in keeping with the description defendants provided, stated in part, "sturdy mtn. cabin in exc. cond." The cabin was in fact infested with dry rot. Plaintiff discovered the dry rot problem in the spring of 1983, when she hired a contractor to perform remodeling services. The trial court found, as do we, that, after the contractor found the dry rot problem, "[h]e proceeded to tear out many walls, most of the fixtures and utilities and attempted to replace joists, beams and studs where dry rot had infested the original ones." Defendants describe the effect of the contractor's curative efforts as turning "what was previously a habitable cabin into an uninhabitable wood pile." Although that description is somewhat hyperbolic, we agree with the trial court's finding that the cabin was not habitable after plaintiff's contractor did what he did.

In 1978, defendant Clifford Latimer had replaced two large wooden beams on the west side of the cabin. He testified that the beams were soft in places and that the nails affixing the beams to the adjacent part of the structure "were pulling out of the wood." To replace the beams, Latimer and his father-in-law had to raise the side of the cabin on jacks. The beams that defendant replaced supported floor joists, some of which had been "scabbed," apparently at an earlier time, to reinforce rotted wood with good wood. The replaced beams were critical to the support of the entire cabin, and in his testimony Latimer acknowledged as much (although he indicated that he had "never [previously] thought of it that way"). At roughly the same time that he replaced the beams, Latimer also performed other repairs that were necessitated by rotted wood. The evidence is persuasive that Latimer either did not

notice or was unaware of problems with the wood in the cabin other than the beams and boards which were the immediate target of his repairs. Defendants performed no further structural repairs during the four years that elapsed before they sold the cabin to plaintiff.

Plaintiff's first assignment is that the trial court erred by concluding that the listing's statement "sturdy mtn. cabin in exc. cond." was a non-actionable statement of opinion rather than a representation of fact. The parties discuss numerous Oregon decisions involving similar issues. We think that the principle stated in *Lackey v. Ellingsen,* 248 Or 11, 432 P2d 307 (1967) is decisive:

> "[S]tatements of opinion are actionable if made 'where the parties are not on an equal footing and do not have equal knowledge or means of knowledge.' *Holland v. Lentz,* 239 Or 332, 345, 397 P2d 787 (1964)." 248 Or at 13.

Defendants argue that, because they were not aware that the cabin had dry rot, their statement was consistent with the facts as they understood them and does not come within the *Lackey* principle. They agree that an "innocent misrepresentation" of fact can be a basis for rescission.[1] *See Hampton v. Sabin,* 49 Or App 1041, 1049, 621 P2d 1202 (1980), *rev den* 290 Or 519 (1981). We are therefore unable to agree with defendants that the relevant question is whether their statement was consistent with their subjective understanding of the facts; rather, the question, as *Lackey* poses it, is whether defendants' knowledge *or means of knowledge* was cognizably greater than plaintiff's. Although they did not know the problem was called "dry rot" or that it was generalized throughout the cabin, they did know that substantial repairs had been necessary because of deteriorated wood, and they also knew that the 1978 repairs were necessary to prevent structural disaster. Under the circumstances, their statement in the listing was a misrepresentation of fact sufficient to warrant rescission. Defendants also argue that plaintiff was an experienced buyer of real estate and that she could not rely

---

[1] *Lackey* was an action for fraud, as was *Holland v. Lentz,* 293 Or 332, 397 P2d 787 (1964), the case which *Lackey* cites for the quoted rule. Both parties rely on *Lackey.* We do not think that the tests for distinguishing between statements of opinion and representations of fact differ in the fraud and rescission actions, at least in any way that is material here.

without independent investigation on the representation or "on any special knowledge or expertise on the part of the defendants." We disagree. *See Bodenhamer v. Patterson,* 278 Or 367, 373-74, 563 P2d 1212 (1977); *Johnson et ux v. Cofer,* 204 Or 142, 149-50, 281 P2d 981 (1955). Plaintiff's first assignment of error is well taken.[2]

Plaintiff assigns as error the trial court's conclusion that rescission could not be granted in this case, because the destruction that her contractor wrought upon the cabin in trying to eliminate the dry rot makes restoration of the *status quo* impossible. Plaintiff argues that the *status quo ante* was not significantly worse than the state of affairs after her contractor had completed his handiwork, because the dry rot made "the cabin * * * worthless when sold." She also argues that the court should have fashioned a remedy aimed at reducing the disparity between the existing conditions and the *status quo ante,* such as allowing defendants to retain part of the purchase price, rather than denying plaintiff any relief. *See Jones v. McGinn,* 70 Or 236, 240-41, 140 P 994 (1914); *Daugherty v. Young,* 47 Or App 585, 615 P2d 341 (1980). Defendants maintain, first, that the cabin was habitable at the time of the sale and is now useless and, second, that, under Oregon case law, rescission notwithstanding non-restoration of the *status quo* is permissible only when fraud is involved.

We do not agree with the second proposition. *See Smiley v. Ackerman et al,* 196 Or 383, 249 P2d 168 (1952). We do agree that, if restoration of the *status quo* or something approximating it were *impossible,* plaintiff might not be entitled to rescission under the facts of this case. *See Smiley v. Ackerman et al, supra,* 196 Or at 394. However, we do not agree with the trial court or defendants that the *status quo* could not have been restored here. The court seemed to have proceeded on the assumption that restoration of the *status quo ante* could be achieved only by the return of a habitable cabin to defendants. We conclude from the fact that defendants sought to sell the cabin rather than live in it, together with the evidence and inferences about the effect of the dry rot on both marketability and habitability, that an award of damages to

---

[2] It is therefore unnecessary for us to address her second assignment.

defendants can suffice to restore the *status quo*.[3]

■   Plaintiff's final assignment is that the court erred by awarding defendants the unpaid balance of the purchase price, as sought in their counterclaim. Our conclusion that plaintiff is entitled to rescission of the contract carries with it the conclusion that she is not liable for the unpaid balance.

Reversed and remanded with instructions to enter judgment for plaintiff on her second claim for relief and on defendants' counterclaim and to award defendants such damages, if any, as may be necessary to restore the *status quo* between the parties as of May 25, 1982, the date of the contract of sale.

---

[3] We reject without discussion defendants' argument that plaintiff is barred from the remedy of rescission because she did not seek it promptly.