CLARENCE H. MILLIKEN *vs.* LEONARD P. SKILLINGS.

Cumberland. Opinion April 28, 1896.

*Sales. Rescission. Offer to Return.*

A sale of personal property with a warranty of quality, and without fraud, may be treated as a sale upon condition subsequent, at the election of the purchaser, and in the event of a breach of the warranty the property may be restored and the sale rescinded.

But the right of rescission is limited to cases where the seller can be put substantially in the position which he occupied before the contract; and this principle makes it the duty of the buyer to return or tender back to the seller whatever of value to himself, or to the other, he has received under the contract.

But if the buyer's offer to restore the goods is met by an absolute refusal of the other party to receive them if tendered, he will be relieved of the duty of actually returning or tendering them to the vendor at the place where the title passed.

The word "offer" is frequently used by courts and text writers as synonymous with "tender" and it may be properly so used with reference to articles capable of manual delivery and actually produced. But with respect to

heavy articles of merchandise situated at a distance from the place to which they must be transported if restored to the vendor, the phrase "offer to return" is more commonly and more aptly employed to express a willingness, or to make a proposal to rescind the contract and return the goods.

It is not sufficient, however, for a buyer who has taken delivery of the goods at the vendor's place of business, merely to express a willingness or make a proposal to return the goods, or simply to give notice to the seller that he holds the goods subject to his order, or to request him to come and take them back.

But if he would rescind the contract, he must return or tender back the goods to the seller at the place of delivery, unless upon making the offer so to do he is relieved of the obligation, as stated, by a refusal to receive them if tendered.

ON MOTION AND EXCEPTIONS BY PLAINTIFF.

The case appears in the opinion.

*D. A. Meaher*, for plaintiff.

*A. F. Moulton*, for defendant.

SITTING: WALTON, FOSTER, HASKELL, WHITEHOUSE, WIS-WELL, STROUT, JJ.

WHITEHOUSE, J.   The plaintiff brought this action on account annexed to recover a balance of $310.29 for 355 cases of canned corn, being 710 dozen cans, sold and delivered under the following agreement signed by him September 4, 1893 :

"I do this day agree to sell to Red Brook Packing Co. my Sweet Corn at $1.00 per doz. warranted to be in good condition with the conditions:

1st.   To pay for cans     $21.00 per M.
2d.    "    "    "   labels, $ 2.40  "    "
3d.    "    "    "   boxes      .09 apiece.
To be taken out of $1.00 per doz."

The defendant filed an account in set off amounting to $405.78 for cans, boxes and labels furnished, and $126.13 in cash paid on account, claiming that the corn received by him was not in good condition as warranted, and had no market value, and furthermore that the contract was rescinded by him on account of this breach of warranty of the quality of the goods.

The jury returned a verdict in favor of the defendant for

$405.78, the exact amount of the account in set off.    The case comes to the law court on exceptions to the instructions of the presiding justice and a motion to set aside the verdict as against evidence.

It is undoubtedly settled law in this state that a sale of personal property with a warranty of quality, and without fraud, may be treated as a sale upon condition subsequent, at the election of the purchaser; and in the event of a breach of the warranty, the property may be returned and the sale rescinded, since a breach of the warranty may be equally injurious to the buyer whether the vendor acted in good faith or bad faith.    *Marston* v. *Knight*, 29 Maine, 341; *Cutler* v. *Gilbreth*, 53 Maine, 176 : *Farrow* v. *Cochran*, 72 Maine, 309.

But the right of rescission is limited to cases where the seller can be put substantially in the position which he occupied before the contract.    "Where a contract is to be rescinded at all it must be rescinded in toto," said Lord Ellenborough, "and the parties put in statu quo."    *Hunt* v. *Silk*, 5 East, 449.    See also *Kimball* v. *Cunningham*, 4 Mass. 502; *Conner* v. *Henderson*, 15 Mass. 319; *Snow* v. *Alley*, 144 Mass. 546 ; *Morse* v. *Brackett*, 98 Mass. 205 ; *Marston* v. *Knight*, 29 Maine, 341.    And this rule which makes it the duty of a buyer, who would rescind a contract for breach of warranty of quality, to restore the seller substantially to his former position, necessarily requires him to return or tender back to the seller whatever of value to himself, or the other, he has received under the contract.    In *Dorr* v. *Fisher*, 1 Cush. 271, Shaw C. J., says that for breach of warranty the vendee may "rescind the contract and recover back the amount of his purchase money, as in case of fraud.    But, if he does this, he must first return the property sold, or do everything in his power requisite to a complete restoration of the property to the vendor, and, without this, he cannot recover."

The law, however requires neither impossibilities nor idle and useless ceremonies.    So if the buyer's offer to restore the goods is met by an absolute refusal of the other party to receive them if tendered, he will be relieved of the duty of actually returning or tendering them to the vendor at the place where the title passed.

In *Noyes* v. *Patrick*, 58 N. H. 618, the idea is thus expressed: "The party seeking to rescind must ordinarily restore or offer to restore, whatever he has received under the contract; and in case of the refusal of the wrong doer to receive it, an offer to restore, properly made, is equivalent to actual restoration." In the discussion of this question the word "offer" is frequently used by courts and text writers as synonymous with "tender", and it may be properly so used with reference to articles capable of manual delivery and actually produced; as in *Luey* v. *Bundy*, 9 N. H. 298, it was said to be unnecessary to produce the notes and money in court: "He had offered them to the defendant, who refused to receive them." But with respect to heavy articles of merchandise situated at a distance from the place to which they must be transported if restored to the vendor, the phrase "offer to return" is more commonly and more aptly employed to express a willingness, or to make a proposal to rescind the contract and return the goods. It is not sufficient, however, for a buyer who has taken delivery of the goods at the vendor's place of business, merely to express a willingness or make a proposal to return the goods, or simply to give notice to the seller that he holds the goods subject to his order, or to request him to come and take them back. If he would rescind the contract, he must return or tender back the goods to the seller at the place of delivery unless upon making the offer so to do he is relieved of the obligation, as stated, by a refusal to receive them if tendered. *Norton* v. *Young*, 3 Maine, 30; *Ayers* v. *Hewett*, 19 Maine, 281; *Cushman* v. *Marshall*, 21 Maine, 122; *Stinson* v. *Walker*, 21 Maine, 211; *Tyler* v. *Augusta*, 88 Maine, 504. The principle controlling the restoration of the status quo in this class of cases is essentially the same as the ordinary rule in regard to the requisites of a valid tender, with respect to which all the authorities agree that there must be an actual production of the money, or its production must be expressly or impliedly waived. Chitty on Cont. 1191; *Sargent* v. *Graham*, 5 N. H. 440.

In this case the only testimony having any tendency to show a rescission is found in the defendant's answers to the following interrogatories:

"Q. What did you say about his taking the corn back?.

A. I told him I couldn't use it, and it would be no good to me, and I didn't think I ought to pay for it.

Q. What about sending it back to him?

A. I don't think I said anything about tendering it back; I don't know whether I did or not, I am sure.

Q. What was said about his trying to sell it?

A. He wanted me to get a half a dozen cans for him and he would take it home and see what he could do with it.

Q. How many cans did he take?

A. Half a dozen.

Q. Whether you heard anything further from him?

A. No sir, I didn't.

Q. State whether after examining the corn he presented any bill to you for it?

A. No sir.

Q. Did he make any request or demand of you for the payment of the balance?

A. No.

Q. What is the next you heard from him?

A. The next I heard was when they put the attachment on.

Q. What have you done with the corn?

A. It is in my cellar subject to Mr. Milliken's order.

. . . . . . . . . . . .

Q. When Milliken came over to examine the corn, after receiving notice from you, state what the talk was about his taking the corn back. Just what the words were?

A. As near as I can remember, I told him it would be of no use to me, I couldn't do anything with it and I wanted him to take it back. He said he would take some samples home and try and sell it himself.

Q. He did take the samples?

A. Yes."

The plaintiff, however, denies that the defendant ever requested him to take the goods back, and says he took the sample cans home for the purpose of examination. There is no evidence whatever

that the plaintiff either consented to take the corn back or that he refused to do so, whatever might be the result of his examination of the samples. The corn was delivered to the defendant at the plaintiff's packing house in Scarboro, but the alleged conversation when the defendant says he "wanted the plaintiff to take it back," occurred at the defendant's residence, four miles distant. At that time forty-five cases of the corn appear to have been in the defendant's shop and the balance in the cellar of his house. It was all in the defendant's possession at the time of the trial.

Upon this evidence the presiding justice instructed the jury as follows: "The plaintiff claims that the corn belonged, and does now, to the defendant. The defendant claims that it belongs to the plaintiff, that he has tendered it back and offered to return it and that it belongs to him, the plaintiff.     . . . . . . .

"Now, the plaintiff claims that under all the circumstances there never has been a rescission of the contract.   . . . .   Now, in the first place, was there an offer here to return these goods? Did the defendant, at the time he states, say to the plaintiff that the goods were not in accordance with the contract, in quality, and did he tender them back to the plaintiff by stating that they were there subject to his order, or words to that effect? There is no set phrase necessary to constitute the rescission of a contract, except that the buyer must offer to return them to the seller on the ground that they were not in accordance with the original arrangement in quality or otherwise.   . . . .   I believe I have now covered these two grounds.   . . . .   If there was an offer to rescind the contract on the ground of a defect in the quality, if done within a reasonable time, it makes no difference whether the seller accepted the offer or not, whether he takes the goods into his possession or not."

In the first place, there was not sufficient evidence in the case to warrant these instructions. It has been seen that the defendant did not claim that he ever returned or tendered the goods to the plaintiff at his place of business, or that he was relieved from so doing by any refusal of the plaintiff to accept them if tendered there. When the defendant says he told the plaintiff the corn

would be of no use to him and he wanted him to take it back, the plaintiff only made a counter proposition that he would take some sample cans home and see what he could do with them. This was clearly insufficient to constitute a rescission. As stated by CUTTING, J., in *Hopkins* v. *Fowler*, 39 Maine, 568, "the instructions must have been called forth upon an assumption of some testimony to warrant them; and if the assumption was erroneous, the instructions became a superstructure without a foundation and might have had some tendency to mislead the jury." In the case at bar there is reasonable ground to apprehend that the jury was misled by the instructions given. The frequent reference in the charge to an "offer to return" the corn, as sufficient to constitute a rescission, necessarily gave the jury the erroneous impression that if the defendant made the offer which he claimed to have made, without any refusal on the part of the plaintiff, he had done all the law required of him in order to rescind the contract. As the corn and packing cases were of some value to the plaintiff, the jury must have found that the contract was rescinded. This is apparent from the amount of the verdict.

The general principles of law involved in the rescission of contracts had been accurately stated in the earlier part of the charge; but it is the opinion of the court that, in giving the jury the more specific instructions above set forth, the learned justice inadvertently omitted to point out the distinctions and qualifications required by the facts and circumstances disclosed in the evidence.

*Exceptions sustained.*