Hazeline Daye **BASNIGHT**, Plaintiff,

v.

**DIAMOND DEVELOPERS, INC., A North Carolina Corporation, and Bruce Bleiman, individually and as an officer of said corporation, Defendants.**

No. 1:00CV00173.

United States District Court,
M.D. North Carolina.

March 29, 2001.

April Gordon Dawson, Dawson Dawson & Dawson, P.A., Graham, NC, for Hazeline Daye Basnight, plaintiff.

Robert Neal Hunter, Jr., Jason Andrew Knight, Hunter Johnston Elam & Benjamin, PLLC, Greensboro, NC, for Diamond Developers, Inc. and Bruce L. Bleiman, defendants.

## MEMORANDUM OPINION

BEATY, District Judge.

This case comes before the Court on Defendants Diamond Developers, Inc. and Bruce L. Bleiman's Motion for Summary Judgment [Document # 32]. The case is also before the Court on Plaintiff Hazeline Daye Basnight's Motion for Partial Summary Judgment [Document # 35]. For all of the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part. Likewise, Plaintiff's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Complaint, pleadings, and other documents presented by the parties reveal that on or about August 1, 1999, Defendant Diamond Developers, Inc. ("Diamond Developers"), through its "Energy Audit Department," ran an advertisement in the Burlington, North Carolina *Times–News* newspaper. This advertisement discussed certain government-sponsored programs aimed at encouraging homeowners to remodel their homes, in an effort to make them more energy efficient. The ad also invited all homeowners interested in such improvements to respond by mail or telephone to the "Energy Audit Department."

On August 15, 1999, Plaintiff, Hazeline Daye Basnight, a 73–year–old widow, responded to Diamond Developers' advertisement, by calling to inquire about the company's available programs and services. In response to Plaintiff's inquiries, on August 24, 1999, at approximately 8:00 p.m., Defendant Bleiman visited Plaintiff's home in Graham, North Carolina. During this meeting, Bleiman prepared a handwritten home improvement contract between Plaintiff and Diamond Developers, which provided that Diamond Developers would install new, specially-ordered cabinetry and countertops in Plaintiff's home.

On September 8, 1999, several days after the initial contract had been signed, Plaintiff signed a typed home improvement contract, which, like the hand-written contract, provided that Diamond Developers would perform certain remodeling services at Plaintiff's home. According to the con-

tract, Diamond Developers was to extend credit to Plaintiff to finance the remodeling. Moreover, the contract granted Diamond Developers a security interest, in the form of a Deed of Trust, in Plaintiff's home. During the contractual negotiations, Defendants provided Plaintiff with a notice of her right to cancel the contract. By the terms in the Notice, the rescission period expired on September 4, 1999, four days prior to the date on which the parties entered into the type-written agreement. The contract identified the parties as Plaintiff and Defendant Diamond Developers, and made no reference to a government-sponsored program, despite the allusions made to government sponsorship in Diamond Developers' newspaper advertisement.

Plaintiff alleges that after she entered into the contract with Diamond Developers, she began to receive unwelcomed phone calls from Diamond Developers' representatives. More specifically, Plaintiff alleges that from October 29 to November 11, 1999, Deborah Spence, General Manager for Diamond Developers, as well as other unnamed Diamond Developers employees, made repeated phone calls to Plaintiff, sometimes at times that Plaintiff considered to be inappropriate, to discuss the contracted-for improvements. According to Plaintiff, these calls were harassing and inconsiderate because the callers were, at times, unfriendly, and because many of the calls were made on Sundays, a time that Plaintiff considered to be sacred.[1]

On September 27, 1999, an employee from Diamond Developers went to Plaintiff's home to take measurements for the installation of the new countertops and stock cabinets for which Plaintiff had contracted. The specially ordered countertops and cabinets were delivered to Plaintiff's home on or about October 29, 1999. As of that date, other than taking the measurements and delivering the goods, Defendants had not done any other work related to the contract.[2] Because Plaintiff was not pleased with the progress that had been made with respect to the contract, on October 29, 1999, Plaintiff sent a letter to the "Energy Audit Department," informing Defendants that she was cancelling the contract due to delayed completion. According to Plaintiff, she had informed Defendants at the onset that she needed the work to be performed expeditiously. Although Plaintiff sent the letter to the address provided in the contract, the letter was returned to Plaintiff, unopened, and marked "RETURN TO SENDER NOT AT THIS ADDRESS."

Despite Plaintiff's October 29, 1999 letter of cancellation, Plaintiff continued to maintain phone contact with Ms. Spence and other Diamond Developers employees. After this phone contact subsided on November 11, 1999, Plaintiff did not have any further contact with Diamond Developers

1. Specifically, Plaintiff contends that although she informed Deborah Spence of the fact that Sunday was her day to be sacred, Defendants' employees still attempted to contact her at that time. In fact, Plaintiff contends that these employees left several message about the contract work on her answering machine while she was at church. When Plaintiff inquired of Ms. Spence why Defendants' employees were repeatedly making phone calls to her home on Sundays, Ms. Spence responded only by informing Plaintiff that her father was a preacher. Plaintiff alleges that this statement upset her because Ms. Spence used an unfriendly tone of voice. (Pl.'s Dep. at 45).

2. Defendants allege that they had in fact arranged to have additional work done at Plaintiff's home. Specifically, Defendants contend that a carpenter was scheduled to arrive at Plaintiff's home on October 30, 1999, to begin the installation process. However, Plaintiff cancelled the appointment.

until November 24, 1999, the day before Thanksgiving. On that day, Defendant Bleiman contacted Plaintiff to discuss the contract with her personally. Plaintiff contends that she was upset by this contact because Bleiman knew that she was represented by an attorney. Although Plaintiff alleges that Bleiman upset her, she admits that Bleiman was "extra polite" during the conversation.

Also on November 24, 1999, Plaintiff's attorney sent a letter, by registered mail, to Ms. Spence, again notifying her and Defendants that Plaintiff was cancelling both the handwritten contract of August 24, and the type-written contract of September 8, 1999. This letter, like the one sent on October 29, 1999, was unclaimed. After the second failed attempt to notify Defendants, Plaintiff's attorney faxed a copy of the letter to Ms. Spence at her home. In the letter, Defendants were instructed that Plaintiff was rescinding the contract, that Plaintiff was entitled to do so under the Truth in Lending Act, that Defendants needed to retrieve all property left at Plaintiff's home in anticipation of making Plaintiff's home improvements, and that Defendants needed to terminate all security interests that Diamond Developers then held in Plaintiff's home. Because no action was taken by Defendants in response to the letter, Plaintiff's attorney sent to Defendant Bleiman, on December 15, 1999, a letter and facsimile reiterating the same information. Specifically, Bleiman was informed that, by December 20, 1999, someone needed to retrieve the cabinets and countertops that had been left on Plaintiff's property. A signed return receipt, presented by Plaintiff, indicated that Defendants had received the letter. Despite this fact,

Defendants took no action to cancel the contract, to retrieve Diamond Developers' property, or to terminate Diamond Developers' security interest in Plaintiff's home. Instead, on December 16, 1999, Diamond Developers responded to Plaintiff's letter by informing Plaintiff that she did not have the right to rescind the contract and that she was responsible for the custom-made cabinetry and countertops being stored on her property and any damage being done thereto. Diamond Developers also informed Plaintiff in the letter that it had a valid deed of trust in Plaintiff's property that could be acted upon at any time. Given Defendants' refusal to terminate the security interest in Plaintiff's property and their failure to timely retrieve the tendered countertops and cabinets, Plaintiff eventually donated the countertops and cabinetry to charity.[3]

On February 22, 2000, Plaintiff initiated this lawsuit against Defendant Diamond Developers and against Defendant Bruce Bleiman individually, alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, ("TILA"), and of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen.Stat. § 75–1.1. Plaintiff also alleged a claim for intentional and negligent infliction of emotional distress against both Defendants. Defendants filed a counterclaim, alleging that Plaintiff breached the home improvement contract.

On April 12, 2000, Defendants filed a Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [Document # 6]. In that motion, Defendants argued that the Court did not have subject matter jurisdiction over Defendant Bleiman, because Bleiman acted,

---

**3.** Plaintiff did not provide the specific date on which she donated the property to charity. However, she noted that she did so ninety days after representatives of Diamond Developers were first notified of her intent to rescind the contract.

at all times relevant to the Complaint, as an agent of Defendant Diamond Developers. Defendants further argued that Plaintiff's Complaint failed to state a claim upon which relief could be granted. Although Defendants' Motion to Dismiss was granted with respect to Plaintiff's TILA claim against Defendant Bleiman individually, Defendants' Motion to Dismiss was denied with respect to all of Plaintiff's other claims.

This matter is presently before this Court on Defendants' Motion for Summary Judgment. Specifically, Defendants moved for summary judgment as to all of Plaintiff's claims that remained after the Court ruled on Defendants' earlier Motion to Dismiss. Plaintiff, after filing a response to Defendants' Motion for Summary Judgment, moved for partial summary judgment on her claim that Diamond Developers violated the TILA, and on her claim that Diamond Developers is liable to her for actual damages and for the statutory penalty for its TILA violation. Plaintiff further moved for partial summary judgment on Defendants' claim that Plaintiff breached the home improvement contract. The Court will next address each of these motions in turn.

## II. STANDARD OF REVIEW

Generally, summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In making a determination on a summary judgment motion, a court views the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. *See Bailey v. Blue Cross & Blue Shield of Va.*, 67 F.3d 53, 56 (4th Cir.1995), *cert. denied*, 516 U.S. 1159, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996). However, mere allegations and denials are insufficient to establish a genuine issue of material fact. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Judges are not " 'required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.' " *Id.* at 251, 106 S.Ct. at 2511 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867, 872 (1871)). Therefore, a motion for summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). On the other hand, a motion for summary judgment should not be granted " 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.' " *Campbell v. Hewitt, Coleman & Associates, Inc.*, 21 F.3d 52, 55 (4th Cir.1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245, 249 (4th Cir.1967)).

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

A. Plaintiff's TILA Claim and Civil Liability

■ Plaintiff alleges that Diamond Developers' misidentification, in the home im-

provement contract, of the last date on which Plaintiff could validly rescind the transaction entitles her to actual damages and/or the statutory penalty provided for by the TILA. In response to Plaintiff's claim, Defendants do not deny that Diamond Developers violated the TILA by giving Plaintiff a defective notice of her right to rescind. Instead, Defendants, after admitting that the improperly dated notice constitutes a technical violation of the TILA, now contend that the inadequate disclosure does not give rise to civil liability.

As to whether such a violation can subject Diamond Developers to civil liability, various courts, including the Fourth Circuit, have explained that even technical violations of the TILA impose liability on a creditor. *See, e.g., Powers v. Sims & Levin,* 542 F.2d 1216, 1218 (4th Cir.1976) (noting that disclosing an incorrect expiration date gives rise to civil liability); *Jackson v. Grant,* 890 F.2d 118, 120 (9th Cir.1989) (holding that disclosing an expiration date that is prior to actual consummation of the loan gives rise to civil liability); *Riopta v. Amresco Residential Mortgage Corp.,* 101 F.Supp.2d 1326, 1330 (D.Haw.1999) (concluding that an improperly dated notice of cancellation gives rise to civil liability); *see also Semar v. Platte Valley Fed. Sav. & Loan Assoc.,* 791 F.2d 699, 704 (9th Cir. 1986) (instructing that where the expiration date is omitted, civil liability arises). Therefore, to the extent that Defendants assert that the defective notice in this case does not give rise to civil liability, the Court disagrees. Not only does case law support such a conclusion, but the statute itself also mandates such a result. Specifically, section 1635 of the TILA requires that a debtor be given proper notice, with-

in three days of consummation, of its right to rescind a secured transaction contract, in any secured transaction in which a security interest is granted in the debtor's home. *See* 15 U.S.C. § 1635(a). Therefore, Diamond Developers violated section 1635's requirements because it misidentified the expiration date for rescission in Plaintiff's notice.[4]

With respect to proper treatment of notice defects, such as the one at issue in this case, section 1640(a) expressly provides that "any creditor who fails to comply ... with section 1635 [of the TILA] is liable to [the obligor] in an amount equal to the sum of—(1) any actual damage sustained" by the obligor as a result of the violation; (2) a statutory penalty of "not less that $200 or greater than $2,000;" and (3) "in any ... action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1640(a). Thus, pursuant to the statute, a debtor may seek damages for a creditor's failure to comply with the notice requirements of the TILA. For all of the foregoing reasons, the Court finds that Diamond Developers' TILA violation, albeit technical in nature, gives rise to civil liability and subjects Diamond Developers to both actual damages and to the statutory penalty. Accordingly, to the extent that Defendants argue that their Motion for Summary Judgment should be granted because technical violations of the TILA do not give rise to civil liability, Defendants' Motion for Summary Judgment is DENIED.

Defendants next argue that even if civil liability does arise for Diamond Developers' TILA violation, their Motion for Sum-

---

4. As mentioned before, the contract stated that Plaintiff's right to rescind expired on September 4, 1999, four days *before* the par-

ties entered into the secured credit transaction, as opposed to September 11, 1999, three days *after* the transaction was consummated.

mary Judgment should be granted, with respect to Plaintiff's claim for actual damages. According to Defendants, summary judgment is proper as to this claim because Plaintiff has suffered no monetary expense or other actual damage as a direct result of Diamond Developers' TILA violation.

■ A party claiming actual damages under the TILA must establish that it detrimentally relied on the TILA violation to withstand summary judgment. In fact, "[m]ost courts that have addressed the issue [of actual damages under the statute] have held that detrimental reliance is an element in a TILA claim for actual damages." *Turner v. Beneficial Corp.*, 242 F.3d 1023 (11th Cir.2001); *see also Perrone v. General Motors Acceptance Corp.*, 232 F.3d 433, 436–40 (5th Cir.2000); *Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 917 (8th Cir.2000); *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir.2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 1088, 148 L.Ed.2d 963 (2001). Consistent with the common law, the TILA itself even specifies that a plaintiff is entitled only to "any actual damages sustained . . . as a result" of the TILA violation, thus suggesting that detrimental reliance is required. *See* 15 U.S.C. § 1640(a)(1). The Court finds further support for the requirement of detrimental reliance in the legislative history accompanying the 1995 amendments, which states:

> Section 130(a) of TILA allows a consumer to recover both actual and statutory damages in connection with TILA violations. Congress provided for statutory damages because actual damages in most cases would be nonexistent or extremely difficult to prove. To recover actual damages, consumers must show that they suffered a loss because they relied on an inaccurate or incomplete disclosure.

H.R.Rep. No. 193, 104, 104th Cong., 1st Sess. (1995).

■ In sum, the legislative history requires a party claiming actual damages to show detrimental reliance. In this case, because Plaintiff alleges that her damages stem solely from the "harassing" phone calls she received by Diamond Developers' representatives, Plaintiff has not alleged any facts showing a causal link between the defective notice given to her and her alleged injuries. In fact, the record is devoid of any facts establishing that Plaintiff's claim of mental and emotional distress can be attributed to Diamond Developers' violation of the TILA. Therefore, even construing the facts in the light most favorable to Plaintiff and affording her the benefit of all reasonable inferences, Plaintiff cannot prevail. Because Plaintiff has not attempted in any way to connect her alleged emotional pain and suffering to the defective notice given to her with respect to her right to rescind the contract, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's claim for actual damages for Diamond Developers' violation of the TILA.

### B. Plaintiff's Right to Rescind the Contract Under the TILA

Defendants next contend that they are entitled to summary judgment to the extent that Plaintiff claims she is entitled by law to rescind the contract. According to Defendants, Plaintiff exceeded the statutory time limits in her attempt to rescind and therefore is bound by the contract. Despite Defendants' contentions, the Court finds that Plaintiff's attempt to rescind was not statutorily time-barred for the following reasons.

■ Although the TILA generally grants an obligor, in a transaction that is secured by the obligor's residence, the

right to rescind the transaction within three business days of consummation, or within three days of delivery of the material disclosures, section 226.23 of Title 12 of the Code of Federal Regulations extends the time for cancellation from three days to three years if the creditor fails to give appropriate notice of the right to cancel to the obligor. *See* 12 C.F.R. § 226.23(a)(3). Because Plaintiff's notice was defective, and because Plaintiff notified Defendants of her intent to rescind the contract within the statutorily imposed three-year time frame, Plaintiff's attempt to rescind the contract was timely. Accordingly, to the extent that Defendants allege that it is entitled to summary judgment because Plaintiff's attempt to rescind was untimely, Defendants' Motion for Summary Judgment is DENIED.

Alternatively, Defendants contend that even if Plaintiff is not precluded by the statute of limitations from validly rescinding the contract under the TILA, Plaintiff's right to rescind the contract has not yet vested in Plaintiff. According to Defendants, Plaintiff's right to rescind is contingent upon either her proper return of the cabinetry and the countertops that Diamond Developers left on her premises, or her payment to Diamond Developers of the reasonable value of the cabinetry and countertops. To address this contention, the Court first turns to the statute. The TILA, in pertinent part, provides:

> [W]hen an obligor exercises his right to rescind ... any security interest given by the obligor, including such interest

arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. *Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value ....* The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. § 1635(b) (emphasis added).

█ In this case, Plaintiff sent Diamond Developers various notices requesting that Diamond Developers "cancel and return any and all notes, negotiable instruments or other indebtedness, including the deed of trust" in fulfillment of its statutory duties. Although section 1635(b) clearly places the burden of first performance on the creditor, the party who violated the law, Diamond Developers refused to return the Deed of Trust, as requested, and threatened, instead, to file it, an act that would have been in stark contrast with its statutory duties.[5] If Diamond Developers

---

5. Defendants currently suggest that Diamond Developers had no duties under the statute because the deed of trust that Diamond Developers acquired in Plaintiff's home is not a valid security interest. Defendants first base this contention on the fact that the deed was never recorded. However, the Federal Reserve Board, which prescribes the regulations governing the TILA, has previously defined "security interest" to mean, among other

things, "deeds of trust, and other consensual or confessed liens, whether or not recorded ...." *Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 210, 101 S.Ct. 2266, 2269, 68 L.Ed.2d 783 (1981). Therefore, to the extent that Defendants allege that no security interest exists because the deed was not recorded, Defendants' contention is without merit.

had undertaken efforts to cancel the security interest obtained in Plaintiff's property, Plaintiff then would have been obligated to tender to Diamond Developers any property or materials that had been left at her premises for the purpose of completing the home improvements. However, because Diamond Developers failed to perform its duties under the statute, Plaintiff's duty to tender Diamond Developers' property never arose.

■ Although Plaintiff had no duty under the statute to return Diamond Developers' cabinetry and countertops, Plaintiff made attempts, on at least two occasions, to tender the property by demanding that Diamond Developers "make arrangements to have the cabinetry and countertops, and any other materials or supplies at Mrs. Basnight's residence picked up."[6] Defendants, however, refused to accept this tender. Because Diamond Developers refused to accept tender, Plaintiff was legally entitled to dispose of or retain the property. In fact, the statute provides that if a creditor does not accept tender of its property within twenty days after tender is made, the debtor becomes the rightful owner of the property. *See* 15 U.S.C. § 1635(b). As previously mentioned, Plaintiff held Diamond Developers' property in excess of twenty days after tender before disposing of it.

Defendants also contend, despite the TILA's language, that the Fourth Circuit's decision in *Powers v. Sims and Levin* requires this Court to condition Plaintiff's right to rescind the contract on Plaintiff's return of Diamond Developers' property. Although the *Powers* court did rely upon equitable principles, as Defendants contend, to alter the parties' statutory responsibilities and rights, *Powers* is factually distinct from the case at bar. *See Powers v. Sims and Levin,* 542 F.2d 1216, 1221 (4th Cir.1976); *see also Abel v. Knickerbocker Realty Co.,* 846 F.Supp. 445 (D.Md. 1994). Specifically, unlike in *Powers,* Plaintiff, in this case, made numerous attempts to return Diamond Developers' property. Despite Plaintiff's efforts, however, Defendants unequivocally refused to accept tender of the cabinetry and countertops.[7] Because Diamond Developers declined to accept tender, its entitlement to the cabinetry and countertops, or the reasonable value thereof, has expired. *See Milliken v. Skillings,* 89 Me. 180, 36 A. 77, 78 (1896) (explaining that if a defendant fails to accept tender, it forfeits its right to its property); *see also* 15 U.S.C. § 1635(b) (explaining that if a defendant fails to ac-

---

Defendants next suggest that no valid security interest exists because Plaintiff never signed the Deed of Trust. However, despite Defendants' current contentions, Defendant Bleiman previously admitted in his deposition that he had a *signed* deed of trust from Plaintiff that was capable of being recorded. In addition, Diamond Developers acknowledged in its December 16, 1999 letter to Plaintiff that it had a *valid* deed of trust in her property. Defendants' prior statements with respect to whether the deed is signed and valid are, therefore, inconsistent with Defendants' current assertions.

6. To the extent that Mrs. Basnight instructed Defendants to retrieve the property from her home, the Court finds that she made a valid tender of the property under the statute. Specifically, section 226.23 of Title 12 of the Code of Federal Regulations provides that "at the consumer's option, tender of property may be made at the location of the property or at the consumer's residence." Here, Mrs. Basnight opted to tender the property at her residence by requesting that Defendants retrieve the property from her home.

7. In fact, instead of retrieving the property, Defendants responded to Plaintiff's requests of retrieval by informing her that "the cabinets and countertops on [her] property were [hers]" and that Plaintiff was assuming the risk for any damage being done to those products.

cept tender within twenty days, a plaintiff becomes the rightful owner of the property). Therefore, Defendants are precluded, at this point, from relying on principles of equity for restitution. For all of the foregoing reasons, to the extent that Defendants argue that Plaintiff is not allowed to rescind the contract without returning Diamond Developers' property or the reasonable value thereof, Defendants' motion is DENIED.

### C. Unfair and Deceptive Trade Practices

Plaintiff alleges in Count Two of her Complaint that Defendant Diamond Developers, Inc., and Defendant Bleiman individually, have engaged in unfair and deceptive trade practices against her, in violation of N.C. Gen.Stat. § 75–1.1. With respect to her claim against Diamond Developers, Plaintiff contends that the "misleading newspaper advertisement," the "harassing phone calls" to Plaintiff by Diamond Developers' employees, and the misrepresentation by a Diamond Developers' representative to Plaintiff that her rescission period had expired, all constitute unfair and deceptive trade practices under § 75–1.1. Defendants allege that Plaintiff cannot establish a valid § 75–1.1 claim because Plaintiff has only alleged *actual* damages with respect to the harassing phone calls that were placed to her by Diamond Developers' employees. Because Plaintiff has not alleged actual damages with respect to the allegedly misleading newspaper advertisement, Defendants contend that they are entitled to summary judgment. To assess the validity of Defendants' claim, the Court next turns to the standard for assessing unfair and deceptive trade practices claims under North Carolina law.

■■■ A party claiming a violation of section 75–1.1 of the North Carolina General Statutes must prove: " '(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business.' " *Wysong & Miles Co. v. Employers of Wausau,* 4 F.Supp.2d 421, 433 (M.D.N.C.1998) (quoting *Murray v. Nationwide Mut. Ins. Co.,* 123 N.C.App. 1, 9, 472 S.E.2d 358, 362 (1996)). A practice is unfair or deceptive when "it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller,* 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Specifically, "[a] party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position." *In re Kittrell,* 115 B.R. 873, 877 (Bankr.M.D.N.C.1990). "A practice is deceptive if it has the capacity or tendency to deceive the average consumer, but proof of actual deception is not required." *Spartan Leasing v. Pollard,* 101 N.C.App. 450, 461, 400 S.E.2d 476, 482 (1991) (citations omitted).

■■■ As stated above, Plaintiff has complained of a number of acts by Diamond Developers in support of her claim for unfair and deceptive trade practices. For Defendants to prevail on their motion for summary judgment, they must show a "right to judgment with such clarity as to leave no room for controversy and [must establish] affirmatively that [Plaintiff] cannot prevail under any circumstances." *Campbell,* 21 F.3d at 55 (quotations omitted). Upon viewing the evidence in the light most favorable to Plaintiff, Plaintiff has alleged as a bare minimum actual damages as a direct result of at least *one* of the practices on which she bases her claim. Given this fact and the fact that a genuine issue of material fact exists over whether the acts about which Plaintiff

complains were misleading, the Court finds that Defendants have not established that Plaintiff cannot prevail under *any* set of circumstances on her § 75–1.1 claim against Diamond Developers. Therefore summary judgment is not proper here because it is within the jury's province, and not within the province of this Court, to determine which of Diamond Developers' actions, if any, proximately resulted in damages to Plaintiff. *See, e.g., Winston Realty Co., Inc. v. G.H.G., Inc.,* 70 N.C.App. 374, 380, 320 S.E.2d 286, 290 (1984), *aff'd,* 314 N.C. 90, 331 S.E.2d 677 (1985). For the foregoing reasons, to the extent that Defendants allege that they are entitled to summary judgment with respect to Plaintiff's claim of unfair and deceptive trade practices against Diamond Developers, Defendants' motion is DENIED.

■ Finally, with respect to Plaintiff's § 75–1.1 claim against Bleiman individually, Plaintiff has based her claim on the telephone call that Bleiman placed to Plaintiff on November 24, 1999.[8] Defendants contend that summary judgment should be granted in their favor with respect to Plaintiff's § 75–1.1 claim against Bleiman because it is not unlawful for one party to a lawsuit to contact an adverse party to the suit, and because Plaintiff has admitted that Bleiman was extra polite during the call.

As stated before, a practice is unfair and deceptive to the extent that it is unscrupulous, unethical, or immoral, or to the extent that it results in an inequitable assertion of power or position. Although Bleiman likely tried to persuade Plaintiff, in his capacity as President of Diamond Developers, to maintain her contractual relation with the company, Plaintiff has failed to present any facts that show that this practice was unethical. In fact, Plaintiff has failed to assert any legal basis for her claim that Bleiman acted improperly in placing the call. Specifically, Plaintiff has not suggested that Bleiman relayed any misleading or deceptive information to her in an attempt to unfairly influence her in any way. Therefore, to the extent that Plaintiff asserts that Bleiman committed an unfair and deceptive trade practice by contacting her personally in an attempt to settle the dispute, Plaintiff's claim is without merit. For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's claim under section 75–1.1 against Defendant Bleiman individually.

### D. Intentional Infliction of Emotional Distress

■ In Count Three of her Complaint, Plaintiff alleges that Diamond Developers has intentionally inflicted emotional distress upon her by allowing its employees to repeatedly contact and harass her with respect to the contract. Defendants allege that Plaintiff's claim of intentional infliction of emotional distress against Diamond Developers should be dismissed because the conduct about which Plaintiff complains is not sufficient to establish an intentional infliction of emotional distress claim. In order to succeed on such a claim, Plaintiff must establish "(1) extreme and outrageous conduct (2) which is intended to and does in fact cause (3) severe emotional distress . . . ." *Dickens v. Puryear,* 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). "Whether conduct alleged is sufficiently 'extreme and outrageous' to

---

8. As far as the Court could determine, Plaintiff bases her claim for unfair and deceptive trade practices against Bleiman solely on this phone call. Plaintiff has presented no evidence and has not alleged that Bleiman was involved in any of the other acts upon which she bases her section 75–1.1 claim.

support such an action is a question of law. Conduct is extreme and outrageous only when it is 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Buser v. Southern Food Service, Inc.*, 73 F.Supp.2d 556, 572 (M.D.N.C.1999) (internal citations and quotations omitted). More specifically, the distinction is between "insults, indignities, threats, annoyances, petty oppressions, or other trivialities," which are not actionable, and atrocious and utterly intolerable conduct, which is actionable. *Johnson v. Bollinger*, 86 N.C.App. 1, 6, 356 S.E.2d 378, 382 (1987).

 In this case, the harassing acts about which Plaintiff complains, those primarily being the alleged frequent phone calls to her home, are not extreme and outrageous conduct on which an intentional infliction of emotional distress claim may properly rest. Rather, the phone calls in question constitute mere annoyances, and perhaps simple indignities, that are not actionable. *See id.* (explaining that although the alleged conduct at issue was offensive, it did not constitute the extreme conduct essential to an intentional infliction of emotional distress claim). Even by Plaintiff's own acknowledgment, these phone calls were insulting simply because they were placed during times that Plaintiff found to be inconvenient, and because the callers, at times, were impolite. However, as the North Carolina courts have instructed, "plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion in the law to intervene in every case where someone's feelings are hurt." *Id.* There-

fore, to the extent that Defendants seek summary judgment with respect to Plaintiff's claim for intentional infliction of emotional distress against Diamond Developers, Defendants' motion is GRANTED.

Defendants have also moved for summary judgment to the extent that Plaintiff also alleges a claim of intentional infliction of emotional distress against Defendant Bleiman individually. Again, the only conduct of Bleiman's about which Plaintiff specifically complains is his phone call to Plaintiff at her home. Plaintiff admitted in her deposition that Bleiman was extra polite during the call. As previously noted, without something more, the Court does not find Bleiman's attempt to resolve the matter with *Plaintiff*, as opposed to with Plaintiff's *attorney*, to constitute extreme and outrageous conduct that exceeds all bounds of decency in a civilized community. For all of the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's claim for intentional infliction of emotional distress against Bleiman individually.

**E. Negligent Infliction of Emotional Distress**

Defendants next contend that they are entitled to summary judgment with respect to Plaintiff's negligent infliction of emotional distress claim against Diamond Developers. As far as the Court can determine, the repeated phone calls made to Plaintiff, by Diamond Developers' employees, form the basis for Plaintiff's claim. However, the Court finds Plaintiff's claim to be fatally deficient for the following reasons.

 To establish a claim for negligent infliction of emotional distress, Plaintiff must prove the following: (1) The de-

fendant negligently engaged in conduct; (2) It was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; and (3) The conduct did in fact cause the plaintiff severe emotional distress. *See Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 327 N.C. 283, 303, 395 S.E.2d 85, 97 (1990), *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990). "Although an allegation of ordinary negligence will suffice, a plaintiff must also allege that severe emotional distress was the foreseeable and proximate result of such negligence in order to state a claim; mere temporary fright, disappointment, or regret will not suffice." *Id.* In view of this standard, even construing the facts in the light most favorable to Plaintiff, Plaintiff has failed to allege any conduct of Diamond Developers, or its employees, that would constitute negligence. Here, Plaintiff's only complaint is that the company's employees attempted to contact her at inappropriate times and that they sometimes used an unfriendly tone when attempting to discuss the home improvements work with her. Even if this conduct took place, Plaintiff has failed to show how this conduct constitutes a breach of a duty owed to Plaintiff. *See id.* (discussing the necessity of a plaintiff to show that defendant breached a duty owed to the plaintiff to make out a claim for ordinary negligence). Because Plaintiff has not alleged any set of facts that supports her claim for negligent infliction of emotional distress, Defendants' Motion for Summary Judgment, with respect to Plaintiff's claim against Diamond Developers, is GRANTED.

■ Defendants also seek summary judgment with respect to Plaintiff's claim for negligent infliction of emotional distress against Bleiman individually. Plaintiff simply bases this claim on the fact that Bleiman telephoned her after she had retained counsel. However, Plaintiff has failed to establish that Bleiman had a duty, as an opposing party, not to contact her in an attempt to settle the dispute. Moreover, aside from Plaintiff's general complaint about the fact that Bleiman called, Plaintiff does not assert that Bleiman discussed or did anything wayward or improper during the call, and Plaintiff acknowledges, instead, as mentioned several times before, that he was extra polite. In light of the fact that courts have traditionally encouraged settlement, and for all of the foregoing reasons, to the extent that Defendants seek summary judgment based upon Plaintiff's claim for negligent infliction of emotional distress against Bleiman, Defendants' motion is GRANTED.

## IV. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Violation of the TILA

■ Plaintiff first moves for partial summary judgment on her claim that Defendant Diamond Developers violated the TILA, and on her corresponding claims that she is entitled to actual damages and the statutory penalty for said violation. As the Court has previously noted, the TILA requires that lenders provide the consumer with appropriate notice of the consumer's right to cancel a credit transaction in which a security interest in the consumer's residence is retained. *See* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(1)(v). In this case, Diamond Developers misidentified the date on which Plaintiff's right to rescind the contract expired. This notice defect, even by Defendants' admission, constitutes a technical violation of the TILA. As stated above, even technical violations of the TILA sub-

ject a creditor to civil liability, including actual damages and the statutory penalty. However, for a debtor to recover actual damages from the creditor, she must establish that she detrimentally relied on the defective disclosure. If the debtor fails to make such a showing, the debtor is only entitled to the statutory penalty. In this case, because the Court has previously determined that Plaintiff has not presented any set of facts establishing that she is entitled to actual damages, Plaintiff may only recover the statutory penalty as a result of Diamond Developers' TILA violation.[9] Furthermore, because Plaintiff has failed to establish detrimental reliance, Plaintiff is now precluded from presenting any evidence at trial, with respect to actual damages from the TILA violation.

■ For all of the reasons above, to the extent that Plaintiff seeks partial summary judgment on her claim that Diamond Developers violated the TILA, her motion is GRANTED. To the extent that Plaintiff moves for partial summary judgment with respect to her claim that she is entitled to actual damages, Plaintiff's motion is DENIED for failure to establish detrimental reliance. However, to the extent that Plaintiff seeks partial summary judgment with respect to her claim that she is entitled to the statutory penalty as a result of Diamond Developers' TILA violation, Plaintiff's motion is GRANTED. As to the specific amount of the penalty to be

assessed against Diamond Developers, the TILA limits statutory damages to twice the finance charge imposed on the debtor, with a minimum penalty of $200 and a maximum penalty of $2,000.[10] The finance charge, pursuant to Plaintiff's contract, was $30,814.20. Because twice the amount of Plaintiff's finance charge exceeds the statutory maximum of $2,000, Plaintiff is entitled to statutory damages of $2,000.

## B. Defendants' Breach of Contract Counterclaim

Plaintiff next seeks partial summary judgment with respect to Defendants' counterclaim that Plaintiff breached the home improvement contract. As discussed above, Plaintiff was entitled, by the TILA, to validly rescind the contract and her obligations thereunder, upon her valid tender of Diamond Developers' property. Once Plaintiff validly rescinded the contract, tendered the property, and maintained it for twenty days, she no longer owed any duties to Defendants. Therefore, to the extent that Plaintiff moves for partial summary judgment with respect to Defendants' claim that Plaintiff breached the home improvement contract, Plaintiff's motion is GRANTED.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment

---

9. Plaintiff may apply to this Court for the determination of attorney's fees and costs for the TILA violation.

10. Specifically, with respect to statutory damages, the TILA provides:
 (a) Except as otherwise provided ... any creditor who fails to comply with ... any requirement under section 1635 ... is liable [to the debtor] in an amount equal to the sum of—

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction ... (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000 ....
15 U.S.C. § 1640(a), (e) (1998).

[Document # 32] is GRANTED IN PART and DENIED IN PART. Furthermore, Plaintiff's Motion for Partial Summary Judgment [Document # 35] is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's motion is granted with respect to Defendants' breach of contract counterclaim, and with respect to Plaintiff's own claim that Diamond Developers violated the TILA. Plaintiff's motion is also granted to the extent that she has alleged that Diamond Developers' TILA violation subjects it to payment of the statutory penalty. Therefore, Plaintiff is entitled to statutory damages in the amount of $2,000.

To the extent that Plaintiff seeks partial summary judgment on her claim for actual damages under the TILA, Plaintiff's motion is denied for failure to establish detrimental reliance. Given the Court's ruling with respect to Plaintiff's and Defendants' motions, the only claim presently remaining for trial is Plaintiff's claim for unfair and deceptive trade practices against Diamond Developers.

An ORDER consistent with this MEMORANDUM OPINION shall be filed contemporaneously herewith.